[Civ. No. 17919. Fourth Dist., Div. Two. Apr. 7, 1978.]

RICH-LEE EQUIPMENT RENTALS, INC.,
Plaintiff and Appellant, v.
INTERMOUNTAIN CONSTRUCTION COMPANY et al.,
Defendants and Respondents.

582

## Counsel

Gray, Gorham & Paul and Richard M. Faith for Plaintiff and Appellant.

Robert B. Holland for Defendants and Respondents.

## Opinion

**MORRIS, J.**—Plaintiff, Rich-Lee Equipment Rentals, Inc., appeals from a judgment in favor of defendant Broadmoor Homes, Inc., on a cause of action for breach of contract, and in favor of defendant First Management Corporation, on causes of action seeking foreclosure of a mechanic's lien and enforcement of a stop notice.[1]

### Mechanic's Lien and Stop Notice

The facts pertinent to the mechanic's lien and stop notice as found by the trial court are as follows:[2]

First Management Corporation (hereinafter referred to as First Management), as owner of certain property in the County of Orange, contracted with Broadmoor Homes, Inc. (hereinafter referred to as Broadmoor) as general contractor to construct a work of improvement on the subject property. On May 29, 1974, Broadmoor entered into a subcontract with Intermountain Construction Company (hereinafter

---

[1]Plaintiff had brought the action alleging breach of contract against four defendants, Intermountain Construction Company, Broadmoor Homes, Inc., Home Savings and Loan Association, and First Management Corporation, and seeking foreclosure of a mechanic's lien and enforcement of a stop notice against the latter two defendants. Judgment was entered in plaintiff's favor and against Intermountain Construction Company for breach of contract and against plaintiff as to all of the remaining defendants.

[2]Additional facts pertinent to the action for breach of contract will be recited later in the opinion.

referred to as Imcco) for the earthmoving work to be done on the property. From June 5, 1974, to August 27, 1974, Imcco rented earthmoving equipment consisting of a dozer and a sheepsfoot tamper together with operators from plaintiff Rich-Lee Equipment Rentals, Inc. (hereinafter referred to as Rich-Lee) at an hourly rate for use on this improvement. Plaintiff's operators also performed overtime work on the property, for which Imcco agreed to reimburse plaintiff for one-half of the operators' additional wages for overtime.

At the end of each day's work the equipment operators filled out work tickets showing the name of the operator, equipment used, and the number of hours worked, which were signed by Imcco's supervisor acknowledging the information to be correct. Imcco had the right to and did exercise direct supervision as to the details of the work to be performed by the equipment operators and had the right to terminate the rental of equipment and operators at any time without cause.

Although as of August 27, 1974, Imcco had agreed to pay plaintiff the sum of $19,943.78, plaintiff never received any payment for the rental of equipment with operators for the work done on the subject property.

The court further found that plaintiff did not serve a preliminary 20-day notice on either First Management, Home Savings and Loan Association (hereinafter referred to as Home), or Broadmoor. However, on January 3, 1975, plaintiff caused to be recorded on the subject property a mechanic's lien in the amount of $19,943.78 for labor, services, and equipment, and on January 16, 1975, plaintiff served on First Management and Home an unbonded stop notice claiming the sum of $19,943.78.

The mechanic's lien was filed within 90 days after completion of the work and within 30 days after filing of notice of completion or notice of cessation of work (thus complying with the requirements of Civ. Code § 3116).

The trial court concluded that service of a preliminary 20-day notice by plaintiff on First Management, Broadmoor, and Home was a necessary prerequisite to perfection of the mechanic's lien and enforcement of the stop notice and that plaintiff's failure to serve such notice rendered its mechanic's lien and stop notice claims invalid.

Plaintiff contends that the trial court erred in concluding that plaintiff was not an employee of defendant Imcco and that service of the preliminary 20-day notice as provided by Civil Code section 3097, subdivision (a), was a prerequisite to the perfection of a mechanic's lien and the enforcement of a stop notice by plaintiff.

Civil Code section 3097 provides in pertinent part as follows:

" 'Preliminary 20-day notice (private work)' means a written notice from a claimant that is given prior to the recording of a mechanic's lien and prior to the filing of a stop notice, and is required to be given under the following circumstances:

"(a) Except one under direct contract with the owner or one performing actual labor for wages, or an express trust fund described in Section 3111, every person who furnishes labor, service, equipment, or material for which a lien otherwise can be claimed under this title, or for which a notice to withhold can otherwise be given under this title, must, as a necessary prerequisite to the validity of any claim of lien, and of a notice to withhold, cause to be given to the owner or reputed owner, to the original contractor, or reputed contractor, and to the construction lender, if any, or to the reputed construction lender, if any, a written preliminary notice as prescribed by this section." Subdivision (c) prescribes the time and contents of the required 20-day notice.

In the instant matter there is no contention that any attempt was made to give the preliminary notice. Plaintiff relies entirely on the exception provided for "one performing actual labor for wages," and claims that under the facts of this case no notice was required. Although not expressly stated it is clear that the court concluded that plaintiff was not "one performing actual labor for wages." Our task is to determine whether plaintiff properly falls within this exception. While plaintiff's argument, premised on the contention that plaintiff was an employee of Imcco and leading to the conclusion that as such plaintiff was a laborer for procedural purposes under the mechanic's lien statutes, is interesting, we prefer to attack the issue directly by first considering the language we are called upon to interpret.

On its face the language is clear and unusually precise. It excepts "one performing actual labor for wages." It would seem clear that one (either an individual or a corporation) who merely furnishes laborers and

equipment for an agreed hourly rate that includes an amount sufficient to pay the rental for the equipment as well as the wages to be paid to the laborers is not "one performing actual labor for wages."[3]

Moreover, if there remains any doubt that the exception referred to the person actually doing the work, it disappears when this language is juxtaposed to language in the rest of the section. Reduced to relevant essentials, the section states that, except "one performing actual labor for wages, . . . every person who furnishes labor" must file the preliminary notice. One almost wonders at the remarkable exactitude of the language. It is only in the context of the interplay of decisional and statutory development of mechanic's lien laws that the need for such explicitness emerges.

The California Constitution, article XIV, section 3 provides: "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens."[4]

Statutory enactments providing for the enforcement of such liens have contained similar language describing the persons entitled to the lien, expanding the constitutional provision only by listing in greater detail the persons falling within the various categories specified in the Constitution. (See Civ. Code, § 3110 and former Code Civ. Proc., § 1181, as added by Stats. 1951, ch. 1159, § 1, p. 2941.)

It was court decision, rather than legislation, that initially spelled out the lien rights of persons furnishing labor as distinguished from persons actually performing labor. The courts simply interpreted the constitutional language regarding laborers who have *bestowed labor* to include persons who have furnished laborers pursuant to a contract as well as persons who directly perform labor. *Sweet* v. *Fresno Hotel Co.* (1917) 174

---

[3]The fact that Imcco agreed to reimburse plaintiff for one-half of the overtime wages does not change the nature of the transaction, but would merely increase the hourly rate by such amount. The equipment rental would still form a part of the price paid to plaintiff.

[4]Similar provision for mechanic's liens was previously found in article XX, section 15, commencing with the Constitution of 1879.

Cal. 789 [164 P. 788], held that a contract between a building superinten-dent and a building contractor, under which the building superintendent was to furnish all common and carpenter labor for the completion of the building and pay all wages and the contractor was to pay him a sum equal to the amount of the monthly payroll plus 10 percent, was a contract to bestow labor on the building entitling the superintendent to a lien. (*Id.,* at pp. 796-797; and see *Rodoni* v. *Harbor Engineers* (1961) 191 Cal.App.2d 560 [12 Cal.Rptr. 924], where foreclosure of a mechanic's lien by one who had furnished labor and equipment for subdivision work was upheld; see also *Myers* v. *Alta Construction Co.* (1951) 37 Cal.2d 739 [235 P.2d 1].)

There can be no doubt that the construction adopted by the courts is consistent with the purpose of the lien laws. The broad language of the constitutional provision makes it clear that all persons contributing labor or materials to a work of improvement are entitled to the protection of a lien, provided they follow the procedure established by the Legislature for enforcement of the lien.

In any event, the fact that the lien laws protect those who furnish labor for, as well as those who directly perform labor upon, a work of improvement has now long been recognized by both the Legislature and the courts. It is only in the procedure for enforcement that a distinction has been made. Former section 1193 of the Code of Civil Procedure (added by Stats. 1959, ch. 2034, § 1, p. 4677, repealed by Stats. 1971, ch. 1284, § 8, p. 2518) contained the same language now found in Civil Code section 3097 distinguishing between one who performs "actual labor for wages" and one who "furnishes labor." We have no doubt that the preciseness of the language was intended to distinguish between the two types of labor claimants.

The distinction well serves the legislative purpose in enacting the preliminary notice requirement of section 3097 (and its predecessor, Code Civ. Proc., § 1193). The Legislature has recognized the need to protect the property owner, who may not be in direct contact with every person who contributes to the work of improvement on the property. The lien laws are for the protection of property owners as well as lien claimants. (*Alta Bldg. Material Co.* v. *Cameron* (1962) 202 Cal.App.2d 299, 304 [20 Cal.Rptr. 713].) The existence of numerous specialties has greatly multiplied the number of subcontractors and suppliers who may

be involved in any construction work. As a consequence, for the protection of the owner as well as the lien claimant, the Legislature has enacted the various notice requirements now found in the statutes. (See Civ. Code, §§ 3114-3118.) Clearly the purpose of the preliminary notice requirement now found in Civil Code section 3097 is to advise the owner at an early stage of claimants with whom he may have no direct contact and hence no actual notice.

"The section does not require a pre-lien notice by those under direct contract with the owner or those who perform actual labor for wages on the property. The logical reason for this distinction is that the owner would in the usual situation be apprised of potential claims by way of lien in connection with those with whom he contracts directly, as well as those who perform actual labor for wages upon the property.

"However, as to materials furnished or labor *supplied* by persons not under direct contract with the owner, it may be difficult, if not impossible, for the owner to be so apprised and the clear purpose of section 1193 [the predecessor of Civil Code section 3097] is to give the owner 15 days' notice in such a situation . . . ." (*Alta Bldg. Material Co.* v. *Cameron, supra,* 202 Cal.App.2d at p. 304, italics in original.)

In keeping with this policy, the Legislature in 1971 added a third exception to Civil Code section 3097 for an express trust fund described in Civil Code section 3111. This exception falls in the same category as the two original exceptions in that the owner would be aware of the potential claim of a trust fund established pursuant to a collective bargaining agreement. By contrast those who merely furnish labor, services, equipment, or material pursuant to a subcontract or other arrangement with anyone other than the owner may not be known to the owner. Thus the section creates two classes of lien claimants: (1) those who have a direct relationship with the owner by reason of their contract with the owner or their performance on the property, and (2) those whose relationship is indirect so that the owner is not necessarily aware of their contribution to the improvement.

 Plaintiff, Rich-Lee, whatever the nature of its agreement with Imcco, a subcontractor on the improvement, was not *itself* performing labor for actual wages on the property. It was a furnisher of labor and as such was in the second class of lien claimants, and, therefore, was

required to give the pre-lien notice as a prerequisite to the validity of its claim of lien.

This interpretation is consistent with the decision of the California Supreme Court in *Borchers Bros.* v. *Buckeye Incubator Co.* (1963) 59 Cal.2d 234 [28 Cal.Rptr. 697, 379 P.2d 1], upholding the constitutionality of the requirement for all lien claimants other than wage laborers and those under direct contract with the owner to give 15 days' prelien notice as required by former Code of Civil Procedure section 1193. In so holding the court quoted with approval the language from *Alta Bldg. Material Co.* v. *Cameron, supra,* 202 Cal.App.2d at pages 303-304, and then stated as follows: "Furthermore, the average uninformed laborer would not, as a practical matter, have the same opportunity to comply with a notice requirement as material suppliers would." (*Borchers Bros.* v. *Buckeye Incubator Co., supra,* at p. 240.) Obviously the court had in mind those who perform actual labor for wages on the property, not a corporation engaged in the business of furnishing labor or labor and equipment such as the plaintiff herein.

In light of the clear statutory distinction between those performing labor for wages and those who furnish labor, it is immaterial whether the one who is a mere furnisher of labor or of labor and equipment is a subcontractor or an employee of a subcontractor. Plaintiff's argument that it was an employee of Imcco and thus a laborer for procedural purposes under the mechanic's lien laws is based upon a misunderstanding of a number of cases wherein the courts have been required to determine whether persons furnishing labor are entitled to a mechanic's lien. In *Contractors Dump Truck Service, Inc.* v. *Gregg Constr. Co.* (1965) 237 Cal.App.2d 1 [46 Cal.Rptr. 738], one of the cases relied upon by plaintiff, the court held simply that plaintiff, as a "furnisher" of labor, was entitled to lien. Similarly, in *Rodoni* v. *Harbor Engineers, supra,* 191 Cal.App.2d 560, it was held that plaintiff in an action to foreclose a mechanic's lien for labor relative to tractor and bulldozer work was an employee rather than a contractor and did not need to be licensed in order to maintain the action. In neither of these cases was the court called upon to determine whether the plaintiff was "performing actual labor for wages"; the prelien notice was not in issue. Nor does *Myers* v. *Alta Construction Co., supra,* 37 Cal.2d 739, also cited, support plaintiff's argument. That case dealt with the issue of whether one who furnished labor and equipment was a laborer within the mechanic's lien laws. The case was decided, however, prior to the enactment of the preliminary

notice requirement, and thus simply involved a consideration of whether the plaintiff was entitled to a lien at all, not with the manner of perfecting the lien.

Of the cases cited by plaintiff, only *Borello* v. *Eichler Homes, Inc.* (1963) 221 Cal.App.2d 487 [34 Cal.Rptr. 648], involved any discussion of the scope of the phrase "actual labor for wages" as used in Civil Code section 3097, subdivision (a). There the plaintiffs were individuals who both supplied and operated equipment at an hourly rental; they filed a prelien notice that contained minor errors in the description of the property; and they were not licensed contractors. The court found no error in the trial court's conclusions that plaintiffs were employees, not unlicensed contractors, that plaintiffs' description of themselves as subcontractors in the prelien notice was not conclusive, and that the property description was sufficient. It was only an incidental comment by the court that former section 1193 of the Code of Civil Procedure excepts from its operation, and from the requirement of giving a prelien notice, "one performing actual labor for wages," and that the plaintiffs therein were employees performing labor for wages and therefore did not come within the statute. (See *id.*, at pp. 491-492, 497-499.) Inasmuch as plaintiffs had given the prelien notice, the court's comment was dictum. Moreover, the court's language, understandable and accurately descriptive in the factual context of that case, can be of no comfort to plaintiff herein since the plaintiffs in *Borello* were in fact the operators of the equipment who had performed actual labor for wages on the property. Both the claim of lien and the action to foreclose the liens were filed by the plaintiffs " 'individually and doing business as Borello Bros., a partnership.' " (*Id.*, at p. 499.) We think it unwarranted to expand the court's comment to have a meaning unnecessary to the disposition of the case before it in order to buttress the largely semantic argument of plaintiff herein.

### Breach of Contract

Plaintiff contends that it should have prevailed in its action for breach of contract against defendant Broadmoor on the theory that Imcco acted as an agent for Broadmoor in contracting with plaintiff. In support of this contention plaintiff cites paragraph 24 of the subcontract agreement between Broadmoor and Imcco, which provided: "Subcontractor [Imcco] shall keep on the job during its progress a competent

foreman and any necessary assistants. The foreman shall represent the Subcontractor in his absence and all directions given by Contractor [Broadmoor] to said foreman shall be as binding upon Subcontractor as if given to Subcontractor."

Plaintiff makes the rather novel argument that whether Imcco acted as Broadmoor's agent in engaging plaintiff to perform grading, excavating, and site preparation is simply a matter of interpretation of the legal effect of this single provision of the contract. Thus plaintiff argues that by reason of this provision Broadmoor retained the right to control the details of Imcco's work to the extent necessary to create an agency relationship.

This argument ignores the remaining 24 paragraphs of the "subcontract" document as well as the specifications attached thereto and all of the actions of the parties with respect to the work.

■ "The existence of an agency is a question of fact . . . which may be implied from the conduct of the parties." (*Thayer* v. *Pacific Elec. Ry. Co.* (1961) 55 Cal.2d 430, 438 [11 Cal.Rptr. 560, 360 P.2d 56].) ■ Plaintiff has failed to point to any evidence of conduct to support the contention that what purports to be a subcontract is anything other than a subcontract. The single paragraph removed from its context in the written agreement of the parties is insufficient to support a finding of agency. Moreover, this paragraph does not on its face retain control as plaintiff contends. It simply requires the subcontractor Imcco to maintain its agent (a foreman) to whom the contractor Broadmoor may give directions it is otherwise authorized under the contract to give to the subcontractor.

Finally, there is absolutely no showing that the agreement between Imcco and plaintiff would be within the scope of any directions Broadmoor was authorized to give to Imcco.

The trial court's determination (1) that paragraph 24 of the written agreement between Broadmoor and Imcco did not give Broadmoor the right to control the details of the work performed by Imcco, and (2) that Imcco was an independent contractor, not the employee-agent of Broadmoor, is clearly consistent with the written agreement and supported by the evidence.

As a consequence the court did not err in entering judgment against plaintiff on its action for breach of contract against Broadmoor.

The judgment is affirmed.

Gardner, P. J., and Tamura, J., concurred.