Opinion
 

 CROSKEY, J.
 

 Defendant, appellant and cross-respondent American Bonding Company (hereafter, ABC) appeals from a judgment of the superior court, in which, after a court trial, the court found in favor of plaintiff, respondent and cross-appellant, Contractors Labor Pool, Inc. (CLP) in CLP’s action against ABC and codefendants Westway Contractors, Inc., and its president. CLP’s complaint sought recovery of damages for breach of contract and common counts as well as recovery on a payment bond which had been furnished by ABC pursuant to Civil Code section 3248. CLP cross-appeals from a postjudgment order awarding it attorney fees under Civil Code section 3250.
 
 [1]
 
 CLP contends the award was so grossly inadequate as to constitute an abuse of discretion.
 

 In the judgment, the court found Westway and its president liable to CLP for damages and also found CLP entitled to recover against ABC on the
 
 *156
 
 bond. On a cross-complaint by ABC, the court found ABC entitled to indemnification from Westway.
 
 [2]
 
 In its postjudgment order awarding attorney fees and costs, the court awarded CLP a total of $12,543.17, including $7,965.49 in attorney fees. CLP had filed a motion for $43,151 in attorney fees for attorneys’ services prior to judgment and had later requested an additional $8,064 for its successful resistance of ABC’s motion for a new trial.
 

 The trial court correctly found CLP to be a claimant entitled to recover against the payment bond. However, the court did not correctly assess the extent of its discretion to award attorney fees under section 3250. We therefore affirm the judgment and remand the matter for a redetermination of the amount of the attorney fee award.
 

 Factual and Procedural Background
 

 CLP is a California corporation in the business of furnishing skilled and unskilled temporary workers to licensed construction contractors. Defendant Westway is a contractor to whom CLP furnished workers for a public works project in which Westway was involved as a subcontractor. The general contractor was R.A. Francis, Inc. (Francis). ABC provided a $567,464 payment bond for the project.
 

 In late 1991, the California Department of Transportation (Cal-Trans) awarded Francis a contract to construct the Vermont Street Station, a passenger station on the Green Line electric railway in Los Angeles County, California. Francis subcontracted with Westway for Westway to do structural concrete work on the station. Westway contracted with CLP for CLP to supply workers for the project. The contract between CLP and Westway was a printed form contract drafted by CLP and entitled “Contractors Labor Pool Labor Agreement.” It provided, among other things, that: (1) Westway would pay CLP an hourly rate for each hour a CLP employee (Special Employee) performed services for Westway; (2) CLP would be responsible for the Special Employees’ payroll taxes, workers’ compensation and other insurance premiums, federal and state withholding, and fringe benefits; (3) Westway would control the activities of the Special Employees while on the job; (4) Westway would indemnify CLP for damages to persons or property arising out of work performed or not performed by the Special Employees
 
 *157
 
 and/or Westway in connection with the labor agreement; (5) Westway would provide CLP with all information needed to maintain CLP’s mechanic’s lien rights and would cooperate with CLP as reasonably requested in connection with filing such liens.
 

 After the labor agreement was executed by CLP and Westway, Westway placed orders for workers, such as carpenters, laborers and superintendents, by calling CLP and making a verbal request. If a particular worker was not satisfactory to Westway, Westway had the right to send that worker back, and Westway directed, controlled and supervised the workers’ activities on the jobsite. CLP paid the workers’ wages and employment benefits, provided workers’ compensation insurance, and was responsible for the workers’ tax withholding. CLP invoiced Westway weekly, based on the actual hours worked by the Special Employees.
 

 Westway eventually fell behind in paying CLP’s invoices, and by April of 1993, Westway owed CLP $170,495.47. When this amount remained unpaid, CLP ceased to provide workers to Westway and, in addition, filed the within action to recover the amounts owing. After a trial, the court found (1) Westway liable to CLP in the amount of $170,495.47, plus service charges, (2) Westway’s president liable to CLP in the amount of $50,000 plus interest, and (3) CLP entitled to recover $170,495.47, plus service charges against the payment bond furnished by ABC. A motion by ABC for a new trial was denied. This timely appeal followed.
 

 Contentions
 

 ABC contends that (1) CLP has no right to recover against the payment bond because it is not a claimant protected by section 3110; (2) alternatively, pursuant to Business and Professions Code section 7031, CLP has no right to
 
 any
 
 recovery under its contract with Westway, because if CLP is indeed a claimant protected by section 3110, then it necessarily was acting in the capacity of a contractor when its employees performed services on the work of improvement, and CLP had no contractor’s license when these services were performed. CLP disputes each of the above contentions and further argues that the court’s postjudgment order awarding attorney fees was so inadequate as to constitute an abuse of discretion.
 

 Discussion
 

 1.
 
 CLP, as a Furnisher of Labor, Was Entitled to Recover on the Payment Bond.
 

 ABC contends CLP is not entitled to recover against the bond, because it is not entitled to a mechanic’s lien under section 3110. ABC cites
 
 *158
 

 Primo Team, Inc.
 
 v.
 
 Blake Construction Co.
 
 (1992) 3 Cal.App.4th 801 [4 Cal.Rptr.2d 701] (hereafter,
 
 Primo Team)
 
 in support of its claim that CLP is not entitled to recover against the bond.
 
 Primo Team
 
 held that an employment services company which performed personnel and payroll services for a subcontractor on a public project,
 
 but was not actually the employer of the workers,
 
 was not entitled to recover against a performance bond.
 
 (Id.
 
 at p. 804.) ABC argues that “[F]or all meaningful purposes, the workers were really employed by Westway while they were on the jobsite because West-way in fact directed and controlled their activities.” Therefore, ABC argues that CLP was an employer of the workers in name only and, like the plaintiff in
 
 Primo Team,
 
 is consequently not entitled to recover on the performance bond.
 

 We disagree. As a furnisher of labor contributing to the public work of improvement, CLP was a claimant protected by the mechanic’s lien law and was therefore entitled to recover against the payment bond.
 
 (Myers
 
 v.
 
 Alta Construction Co.
 
 (1951) 37 Cal.2d 739, 742 [235 P.2d 1];
 
 Sweet
 
 v.
 
 Fresno Hotel Co.
 
 (1917) 174 Cal. 789, 797 [164 P 788];
 
 Primo Team, supra,
 
 3 Cal.App.4th at p. 807;
 
 Rich-Lee Equipment Rentals, Inc.
 
 v.
 
 Intermountain Constr. Co.
 
 (1978) 79 Cal.App.3d 581, 588-589 [145 Cal.Rptr. 106];
 
 Contractors Dump Truck Service, Inc.
 
 v.
 
 Gregg Constr. Co.
 
 (1965) 237 Cal.App.2d 1, 4-5 [46 Cal.Rptr. 738].).
 

 a.
 
 Those Who Furnish Laborers for a Public Work of Improvement, as Well as Those Who Perform Labor Themselves, Are Entitled to Recover Against a Payment Bond.
 

 Section 3248 provides that a payment bond on a construction contract awarded by a public entity must “[bjy its terms inure to the benefit of any of the persons named in Section 3181 so as to give a right of action to such persons or their assigns in any suit brought upon the bond.” Section 3181 provides that: “Except for an original contractor, any person mentioned in Section 3110, 3111 or 3112, or in Section 4107.7 of the Public Contract Code, or furnishing provisions, provender, or other supplies” may serve a stop notice for a public work. Section 3110 mentions the following persons and entitles such persons to a mechanic’s lien for the value of labor done or materials furnished to any work of improvement: “[mechanics, material-men, contractors, subcontractors, lessors of equipment, artisans, architects, registered engineers, licensed land surveyors, machinists, builders, teamsters, and draymen, and all persons and laborers of every class performing labor upon or bestowing skill or other necessary services on, or furnishing materials or leasing equipment to be used or consumed in or furnishing
 
 *159
 
 appliances, teams, or power contributing to a work of improvement. . . .” Included among “persons and laborers . . . performing labor upon or bestowing skill or other necessary services on” a work of improvement are persons and entities like CLP, which furnish laborers to the worksite, as well as persons who physically perform labor themselves.
 
 (Myers
 
 v.
 
 Alta Construction Co., supra,
 
 37 Cal.2d at p. 742;
 
 Contractors Dump Truck Service, Inc.
 
 v.
 
 Gregg Constr. Co., supra,
 
 237 Cal.App.2d at pp. 4-5.) The Supreme Court has stated that, for purposes of determining entitlement to a mechanic’s lien, “[i]t is . . . apparent from a reading of [former Code Civ. Proc. § 1183, defining persons entitled to a mechanic’s lien] that the Legislature makes no distinction as to whether a claimant performs work personally or merely furnishes persons to do the work.”
 
 (Myers
 
 v.
 
 Alta Construction Co., supra,
 
 37 Cal.2d at p. 742.)
 
 [3]
 

 In
 
 Primo Team, supra,
 
 3 Cal.App.4th 801, which is relied upon by ABC, plaintiff Primo Team, Inc. (Primo) entered into a series of “Labor Services Agreements” with R.J. 1, Inc. (R.J.), a subcontractor on a public project. These agreements, which evidently were similar in form to the “Labor Agreement” between CLP and Westway, called for Primo to supply Primo employees to R.J. to perform labor on a public work.
 
 (Id.
 
 at p. 804.) However, the court found that “the reality was substantially different,” and R.J., not Primo, was the actual employer of the workers.
 
 (Id.
 
 at p. 804, fn. 3.) Summary judgment was entered against Primo in its suit on the payment bonds on the ground that Primo was not within the class of persons entitled to pursue claims on public payment bonds.
 
 (Id.
 
 at pp. 803-804.)
 

 On appeal, Primo did not claim it had been the actual employer of the workers, but nevertheless contended it was entitled to recover against the payment bond as a furnisher of labor. Primo argued that there is no requirement that a furnisher of labor actually employ the laborers (3 Cal.App.4h at pp. 806-808), and claimed it was entitled to protection as a furnisher of labor, because it performed all of the functions performed by such an entity, such as assembling the work force, administering the payroll, and performing other necessary administrative functions.
 
 (Id.
 
 at p. 806.) Only the lack of the legal status of “employer” distinguished Primo from entities which had been found eligible to recover against a payment bond.
 
 (Id.
 
 at p. 808.)
 

 
 *160
 
 The
 
 Primo Team
 
 court rejected Prime’s argument, citing
 
 Sweet
 
 v.
 
 Fresno Hotel Co., supra,
 
 174 Cal. 789 at pages 807-809. In
 
 Sweet,
 
 the Supreme Court found Sweet, a labor supplier, to be a proper mechanic’s lien claimant as to one of two contracts that he had with a general contractor, but not as to the other contract. The contract which gave rise to a valid lien claim was executed June 1, 1911, and provided for Sweet to furnish his own employees as workers on a work of improvement.
 
 (Sweet
 
 v.
 
 Fresno Hotel Co., supra,
 
 174 Cal. at pp. 796-797.) By contrast, the other contract, executed April 1 of the same year, had only provided for Sweet to supervise work performed by the employees of the general contractor and to assume and pay the wages due from the contractor to the workers.
 
 (Id.
 
 at pp. 795-796.) Respecting the April 1 contract, the
 
 Sweet
 
 court reasoned that “[s]o far as the work is concerned, Sweet’s only function was to act as superintendent and to pay the wages due from the contractor to the men. He was not the employer. In effect he was loaning money to the contractor and performing service as superintendent of the work, for which service he was to receive an amount equal to ten per cent of the wages earned by the men. The law does not allow a lien for money loaned to a building contractor to enable him to carry out his contract.”
 
 (Id.
 
 at pp. 795-796.) The
 
 Primo Team
 
 court observed that Primo
 
 neither
 
 supervised the construction activities of the workers it assembled for R.J., as Sweet had done in his April 1, 1911, contract,
 
 nor
 
 employed the workers. The court therefore concluded that Primo had not “furnished” labor to the work of improvement and thus was not entitled to recover against the payment bond.
 
 (Primo Team, supra,
 
 3 Cal.App.4th at p. 809.)
 

 b.
 
 The Employer of Workers Who Contribute to a Work of Improvement Is a “Furnisher” of the Employees’ Labor.
 

 ABC’s argument in this case is the logical inverse of Primo’s argument in
 
 Primo Team, supra,
 
 3 Cal.App.4th 801. Primo argued that it had performed functions identical to persons and entities found to be protected by the mechanic’s lien law as furnishers of labor, and lacked only the legal status of employer of the workers. Therefore, Primo contended it was entitled to lien rights and rights related to them, in particular, the right to recover against a payment bond.
 
 (Id.
 
 at pp. 806-808.) ABC, on the other hand, argues that CLP performed all of the same functions for Westway as were performed by Primo for R.J., and CLP differed from Primo only by assuming the label of employer. Therefore, ABC argues that CLP, like Primo, is
 
 not
 
 entitled to a mechanic’s lien or recovery against a payment bond.
 

 This argument fails for reasons stated in the venerable
 
 Sweet
 
 case. The defendant in
 
 Sweet
 
 contended that the June 1 contract, like that of April 1,
 
 *161
 
 did not give rise to lien rights, because it provided for Sweet to perform functions essentially identical to those he performed under the April 1 contract.
 
 (Sweet
 
 v.
 
 Fresno Hotel Co., supra,
 
 174 Cal. at p. 796.) After concluding that Sweet’s April 1 contract did not entitle him to mechanic’s lien rights, the Supreme Court then stated that the terms of the June 1 contract compelled a different result. “We cannot agree to the proposition that this contract was a mere reiteration or renewal of the previous contract of April 1, 1911. Its language was different from the previous contract in a very important particular, and was presumably made so with the purpose of changing its effect. [U It may be true, as contended by the defendant, that the actual mode of carrying on the work and paying the men after June 1st did not differ materially in appearance from that practiced before June 1st. But this similarity was not fatal to the validity, or destructive of the effect, of the new contract. The old contract was, in effect, an agreement by Sweet to advance money to pay the debts owing by Farley & Co.; the new one was an agreement by him to bestow labor upon the building,
 
 hiring the men himself
 
 and paying their wages.”
 
 (Sweet
 
 v.
 
 Fresno Hotel Co., supra,
 
 174 Cal. at pp. 796-797, italics added.)
 

 The import of the foregoing is that
 
 the legal status of an employer
 
 of laborers furnished to a work of improvement is the crucial factor which distinguishes a person who “furnishes” such laborers to the project, and is thus entitled to lien rights, from a person who merely organizes the work force, performs administrative functions, advances wages, or does all three
 
 in behalf of another,
 
 and is consequently not entitled to lien rights. ABC argues, however, that Sweet’s responsibility of supervising the work under the June 1 contract was crucial in the Supreme Court’s determination that he was entitled to a mechanic’s lien in respect to that contract. In support of this argument, ABC cites the high court’s observation that Sweet “actually did select and hire the men
 
 and superintend them in the work
 
 under the contract of June 1st.” (174 Cal. at p. 797, italics added.) But Sweet also supervised the work under the April 1 contract, and that fact did not entitle him to a mechanic’s lien. To the contrary, the Supreme Court remarked that, under the April 1 contract, “. . . Sweet’s
 
 only
 
 function was to
 
 act as superintendent
 
 and to pay the wages due from the contractor to the men.
 
 He was not the employer.” (Id.
 
 at p. 795, italics added.)
 

 The designation of a person as the “employer” of another is not a mere label, as ABC contends. Rather, such designation signifies a legal relationship in which the employer has legal responsibilities to the employee and to third parties, which are absent where a person merely supervises another’s employees or disburses to such employees wages which are due
 
 from the
 
 
 *162
 

 other person
 
 to the employees, as was the case under the April 1, 1911, contract in
 
 Sweet.
 
 Essentially,
 
 Sweet, Myers
 
 v.
 
 Alta Construction Co., supra,
 
 37 Cal.2d 739,
 
 Primo Team, supra,
 
 3 Cal.App.4th 801,
 
 Rich-Lee Equipment Rentals, Inc.
 
 v.
 
 Intermountain Constr. Co., supra,
 
 79 Cal.App.3d 581, and
 
 Contractors Dump Truck Service, Inc.
 
 v.
 
 Gregg Constr. Co. supra,
 
 237 Cal.App.2d 1, all stand for the proposition that an entity which takes upon itself the legal responsibilities of an
 
 employer
 
 is entitled to a mechanic’s lien and related remedies if it furnishes the labor of its employees to a work of improvement, but one who does not assume those legal responsibilities is not.
 

 c.
 
 Substantial Evidence Supports the Trial Court’s Conclusion That CLP Was the Employer of the Workers It Sent to Westways, and Was Consequently a “Furnisher” of Their Labor.
 

 Finally, ABC argues that, under the labor agreement between CLP and Westway, CLP did
 
 not
 
 bear certain responsibilities that are generally borne by an employer. In particular, the contract provided that CLP would not be responsible for damages caused by the Special Employee’s performance or nonperformance of work, and that Westway agreed to indemnify CLP for “all claims for damages to persons or property arising out of work performed by the Special Employees. ...” Under the doctrine of respondeat superior, an employer is liable for torts of its employees. ABC thus argues that the contract provision relieving CLP of such liability is evidence that CLP was not the employer of the workers furnished to Westway.
 

 The foregoing argument is logically flawed. In truth, if the agreement between CLP and Westway contemplated that Westway would be the workers’ employer, and CLP would merely function as Westway’s personnel administrator, there would be no need for a contractual provision for West-way to be responsible for the workers’ torts, for Westway would have that responsibility as a matter of course under the respondeat superior doctrine. The express provision assigning responsibility for the employees’ torts to Westway raises an inference that, absent the provision, the responsibility would belong to CLP, and this, in turn, raises the inference that CLP was indeed the workers’ employer. This latter inference is strengthened by the provision that Westway agreed to “indemnify” CLP for the workers’ torts. If Westway were the workers’ employer, it would have
 
 primary
 
 responsibility for torts committed in the course of their employment. Inasmuch as the contract provided for Westway to indemnify CLP for such torts, it follows that it was CLP which had primary responsibility for them—a responsibility which flowed from CLP’s status as the workers’ employer.
 

 
 *163
 
 Ultimately, the nature of the relationships among CLP, Westway and the Special Employees is a question of fact, on which we defer to the trial court.
 
 (Rodoni
 
 v.
 
 Harbor Engineers
 
 (1961) 191 Cal.App.2d 560, 561-563 [12 Cal.Rptr. 924] [substantial evidence supported trial court’s finding that one who leased equipment to a developer and furnished laborers, including himself, to operate such equipment was not a contractor, required to have a contractor’s license, but was an employee as to his own services and a furnisher of his employees’ labor, and was entitled to a mechanic’s lien].) Here, the trial court made the following findings, among others, on that question: (1) the workers were interviewed, screened and hired by CLP according to its own procedures and applying its own employment criteria; (2) the employees signed applications for employment
 
 with CLP
 
 and also signed written conditions of employment identifying them as employees of CLP; (3) CLP provided the employees with its own standard “Employee Handbook”; (4) while Westway had a right to reject or “send back” any worker sent to the jobsite by CLP, Westway had no right to go farther and terminate the worker’s employment with CLP; (5) the workers’ time cards and other personnel documents identified them as CLP employees; (6) CLP covered the employees with its own workers’ compensation insurance policy; and (7) when Westway fell into default in payments to CLP, CLP threatened to withdraw workers from the project, not to stop processing or paying payroll for Westway.
 

 ABC has not disputed any of the above findings; substantial evidence supports the findings; and the findings support the conclusion that CLP was indeed the workers’ employer. The trial court therefore correctly determined that CLP was a “furnisher” of labor to the work of public improvement and was consequently entitled to recover against the payment bond.
 

 2.
 
 CLP Did Not Act in the Capacity of a Contractor and Thus Was Not Required to Have a Contractor’s License.
 

 ABC contends, in the alternative, that CLP is not entitled to any recovery on its contract with Westway, because it acted in the capacity of a contractor when its employees performed services on the project. ABC contends that, by CLP’s very act of characterizing itself as the employer of workers who performed services on the project, CLP has placed itself squarely within the definition of a “contractor” under the Contractors’ State License Law. Therefore, ABC contends, CLP was required to have a contractor’s license. CLP did not have a contractor’s license at the time its employees performed services. Therefore, ABC contends that, pursuant to
 
 *164
 
 Business and Professions Code section 7031, subdivision (a), CLP may not recover a judgment for such services.
 
 [4]
 

 CLP contends ABC waived the issue of whether a contractor’s license was required, because it did not rely upon such an argument in the trial court. We believe the issue was sufficiently litigated to avoid a finding of waiver. However, we disagree with ABC’s substantive claim that every furnisher of labor who is entitled to protection under sections 3110, 3181 and 3248 is necessarily a “contractor” who is required to have a license under Business and Professions section 7031.
 

 Section 7031 of the Business and Professions Code precludes a person “engaged in the business or acting in the capacity of a contractor” from bringing an action in law or equity to collect for compensation for services requiring a license, unless the person pleads and proves that he or she was duly licensed when the services were performed. Business and Professions Code section 7026 defines a “contractor” as “any person, who undertakes to or offers to undertake or purports to have the capacity to undertake to or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith, or the cleaning of grounds or structures in connection therewith, and whether or not the performance of work herein described involves the addition to or fabrication into any structure, project, development or improvement herein described of any material or article of merchandise. The term contractor includes subcontractor and specialty contractor.”
 

 ABC contends that CLP acted in the capacity of a contractor because “[tjhrough its employees, CLP constructed a portion of the Transit Station.” However, ABC misconstrues the meaning of language in Business and Professions Code section 7026 which provides that a contractor includes one who “does himself[,]
 
 or by or through others,
 
 construct, alter, repair,” or otherwise improve property. Acting “by or through others” to improve property for purposes of the Contractors’ State License Law entails directing
 
 *165
 
 or supervising the work performed, although “employing” others, for purposes of the mechanic’s lien law does not. The purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services. The licensing requirements provide minimal assurance that all persons offering such services have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business.
 
 (Hydrotech Systems, Ltd.
 
 v.
 
 Oasis Waterpark
 
 (1991) 52 Cal.3d 988, 995 [277 Cal.Rptr. 517, 803 P.2d 370];
 
 Home Depot, U.S.A., Inc.
 
 v.
 
 Contractors’ State License Bd.
 
 (1996) 41 Cal.App.4th 1592, 1598 [49 Cal.Rptr.2d 302].) To effect this purpose, the law need apply only to those who actually perform or supervise the performance of construction services; it need not apply to those who only supply materials to be used by others or laborers who will be supervised by others. Thus, a person or company in the business of supplying equipment or hiring out laborers to be supervised by others is not deemed to act in the capacity of a contractor and is not required to have a license.
 
 (Contractors Dump Truck Service, Inc.
 
 v.
 
 Gregg Constr. Co, supra,
 
 237 Cal.App.2d at p. 7;
 
 Rodoni
 
 v.
 
 Harbor Engineers, supra,
 
 191 Cal.App.2d at pp. 562-563.)
 

 In support of its claim that CLP acted in the capacity of a contractor when it furnished laborers to Westway, ABC cites
 
 Vallejo Development Co.
 
 v.
 
 Beck Development Co.
 
 (1994) 24 Cal.App.4th 929 [29 Cal.Rptr.2d 669],
 
 Skipper
 
 v.
 
 Gilbert J. Martin Constr. Co.
 
 (1957) 156 Cal.App.2d 82 [318 P.2d 732],
 
 Albaugh
 
 v.
 
 Moss Construction Co.
 
 (1954) 125 Cal.App.2d 126 [269 P.2d 936], and
 
 Phillips
 
 v.
 
 McIntosh
 
 (1942) 51 Cal.App.2d 340 [124 P.2d 835]. These cases are inapposite, for in each the person or entity seeking compensation for unlicensed services contracted to
 
 perform
 
 or to
 
 supervise
 
 construction services—activities plainly within the scope and purposes of the Contractors’ State License Law. In
 
 Vallejo Development Co., supra,
 
 24 Cal.App.4th 929, the plaintiff contracted to be “
 
 ‘solely responsible
 
 for completion of all offsite, onsite and infrastructure improvements’ ” for a residential development.
 
 (Id
 
 at p. 936.) The plaintiff in
 
 Skipper
 
 v.
 
 Gilbert J. Martin Constr. Co., supra,
 
 156 Cal.App.2d 82 contracted to “furnish labor and himself as general foreman for the purpose of framing . . . houses at the basic price of 38 [cents] per square foot per house.’ ”
 
 (Id.
 
 at pp. 84.) The plaintiff in
 
 Albaugh
 
 v.
 
 Moss Construction Co., supra,
 
 125 Cal.App.2d 126 contracted to furnish labor and materials and to complete the subject construction project at the rate of six houses per day.
 
 (Id.
 
 at p. 129.) In
 
 Phillips
 
 v.
 
 McIntosh, supra,
 
 51 Cal.App.2d 340, the plaintiff, through her manager, who was also her husband, contracted to perform plumbing services for the defendant.
 
 (Id.
 
 at pp. 343.)
 

 In each of these cases, the plaintiff was unlicensed, was found to have acted in the capacity of a contractor, and was consequently denied recovery
 
 *166
 
 for the unlicensed services rendered.
 
 (Vallejo Development Co.
 
 v.
 
 Beck Development Co., supra,
 
 24 Cal.App.4th at p. 938;
 
 Skipper
 
 v.
 
 Gilbert J. Martin Constr. Co., supra,
 
 156 Cal.App.2d at pp. 85-86 [but the plaintiff was found entitled to amend his complaint to allege entitlement to recover for materials furnished to the defendant outside of the scope of the illegal contract];
 
 Albaugh
 
 v.
 
 Moss Construction Co., supra,
 
 125 Cal.App.2d at pp. 131-132;
 
 Phillips
 
 v.
 
 McIntosh, supra,
 
 51 Cal.App.2d at p. 343.) However, none of these cases concerns a person or entity who, like CLP, simply furnished laborers to another, and did not actually perform or supervise any construction services or contract, bid or promise to do so.
 

 Here, it is undisputed that CLP only furnished laborers to Westway, and that the full supervision and control of the workers furnished by CLP was the responsibility of Westway, the subcontractor who actually performed the construction services on the public work.
 
 [5]
 
 The case is therefore governed by the rule that a person or company in the business of supplying equipment or hiring out laborers to be supervised by others does not act in the capacity of a contractor and is not required to have a license.
 
 (Contractors Dump Truck Service, Inc.
 
 v.
 
 Gregg Constr. Co, supra,
 
 237 Cal.App.2d at p. 7;
 
 Rodoni
 
 v.
 
 Harbor Engineers, supra,
 
 191 Cal.App.2d at pp. 562-563.)
 

 Finally, ABC contends that
 
 Contractors Dump Truck Service, Inc.,
 
 and
 
 Rodini
 
 do not apply to this case, because Business and Professions Code section 7053 has been amended since those cases were decided. Business and Professions Code section 7053 provides that the Contractors’ State License Law does not apply to a person who “engages in the activities herein regulated as an employee who receives wages as his or her sole compensation, does not customarily engage in an independently established business, and does not have the right to control or discretion as to the manner of performance so as to determine the final results of the work performed.”
 
 [6]
 
 ABC contends that CLP is customarily engaged in an independently established business and, for that reason, as well as others, CLP is not excepted by Business and Professions Code section 7053 from the licensure requirement. However, as we have already observed, CLP has no need to be excepted from the licensure requirement for purposes of this action, because it did not act in the capacity of a contractor as defined in Business and Professions Code section 7026 when it furnished laborers to Westway.
 
 *167
 
 Stated otherwise, Business and Professions Code section 7053 excepts from the Contractors’ State License Law a person who “engages in the activities [therein] regulated,” if the person functions only as a wage-earning employee. However, CLP did not engage in activities regulated by the Contractors’ State License Law. It is thus immaterial that CLP does not match Business and Professions Code section 7053’s description of a wage-earning employee who is excepted from the law.
 

 In sum, CLP did not act in the capacity of a contractor in furnishing labor to the work of improvement. It was therefore not required to have a contractor’s license to furnish laborers for the public work, and it is entitled to judicial enforcement of its rights under its contract with Westway.
 

 3.
 
 The Matter Must Be Remanded for a Redetermination of the Appropriate Attorney Fee Award.
 

 The prevailing party in an action to recover on a bond is entitled to recover its attorney fees. (§ 3250;
 
 Leatherby Ins. Co.
 
 v.
 
 City of Tustin
 
 (1977) 76 Cal.App.3d 678, 690 [143 Cal.Rptr. 153].) Here, CLP was awarded costs and reasonable attorney fees pursuant to section 3250, and after the entry of judgment, CLP moved for $51,215 in attorney fees, in addition to other costs. CLP provided detailed documentation justifying the charges. However, at the commencement of the hearing on CLP’s motion for attorney fees the court said “I don’t think you’ve made anything to show [why] the attorney’s fees allowable in this case would not fall within local rule 3.2, the presumptive limitations in 3.2, local rules.”
 
 [7]
 
 After hearing arguments from counsel, the court stated, that “I think that I’m sort of locked in with the local rule. I don’t think there’s been a showing that the amount over and above what’s in the local rule is a reasonable amount of money, so I’ll grant the motion, but I’m going to limit the attorney’s fees to that in local rule of 3.2, which I calculate out to be $7,965.49.”
 

 CLP contends the trial court erred by basing its award of attorney fees upon the schedule in Los Angeles County Superior Court rule 3.2 and not awarding “reasonable” fees, as required by section 3250. (See fn. 1,
 
 ante.)
 
 We agree.
 

 
 *168
 
 In determining what constitutes a reasonable attorney fee when a contract or statute provides for such an award, courts should consider the nature of the litigation, its difficulty, the amount involved, and the skill required and success of the attorney’s efforts, his or her learning, age and experience in the particular type of work demanded, the intricacies and importance of the litigation, the labor and necessity for skilled legal training and ability in trying the cause, and the time consumed.
 
 (Church of Scientology
 
 v.
 
 Wollersheim
 
 (1996) 42 Cal.App.4th 628, 659 [49 Cal.Rptr.2d 620];
 
 Hadley
 
 v.
 
 Krepel
 
 (1985) 167 Cal.App.3d 677, 682 [214 Cal.Rptr. 461].) The amount to be awarded to a party as attorney fees is a matter within the sound discretion of the trial judge.
 
 (Church of Scientology
 
 v.
 
 Wollersheim, supra,
 
 42 Cal.App.4th at p. 659;
 
 Clayton Development Co.
 
 v.
 
 Falvey
 
 (1988) 206 Cal.App.3d 438, 447 [253 Cal.Rptr. 609].) However, the court has the duty to exercise its discretion in making the determination, and a case will be remanded for a redetermination of the fee award if it is evident that the court’s ruling was not an exercise of discretion, but the consequence of an erroneous view of the court’s own power.
 
 (Sternwest Corp.
 
 v.
 
 Ash
 
 (1986) 183 Cal.App.3d 74, 76 [227 Cal.Rptr. 804].)
 

 Here, the trial court indicated by its remarks from the bench that it did not take due consideration of the factors listed in
 
 Church of Scientology
 
 v.
 
 Wollersheim, supra,
 
 42 Cal.App.4th 628, 659 and
 
 Hadley
 
 v.
 
 Krepel, supra,
 
 167 Cal.App.3d 677, 682 in making its attorney fee award. Instead, the record shows that the court followed the formula provided in Los Angeles County Superior Court rule 3.2 and, based on that formula, awarded CLP less than 15 percent of the amount it claimed.
 

 The court did not, indeed, entirely fail to exercise discretion as to the amount of attorney fees. The trial judge’s remarks from the bench indicate he exercised some independent evaluation of CLP’s fees claim, for he stated he did not believe there had been a showing that the amounts over and above $7,965.49 were “reasonable.” However, the judge also stated that he believed the formulas in Los Angeles County Superior Court rule 3.2 imposed “presumptive limitations,” suggesting he declined to award CLP its meticulously documented attorney fees because he believed himself subject to such limitations. The limitations which the trial judge referred to evidently were those in subdivision (d) of rule 3.2, which authorize an award over the amounts provided by the formulas in subdivisions (a) through (c) only where “extraordinary” services were performed. It thus appears that the trial court believed it could not award fees greater than those provided by the formulas unless it determined that the services were “extraordinary.” This was error.
 

 Los Angeles County Superior Court rule 3.2, which limits attorney fee awards to amounts calculated under the rule’s formulas, except when the
 
 *169
 
 attorney’s services were “extraordinary,” conflicts with section 3250, which provides that in an action on a payment bond, “the court shall award to the prevailing party a
 
 reasonable
 
 attorney’s fee . . .” The conflict exists because the local rule purports to limit a court’s discretion in setting a fee award, but the statute contains no such limitations. To the extent a local rule conflicts with a state statute, the rule is invalid.
 
 (Kalivas
 
 v.
 
 Barry Controls Corp.
 
 (1996) 49 Cal.App.4th 1152, 1158 [57 Cal.Rptr.2d 200] [“courtroom local rule” which required a joint statement of disputed and undisputed facts on a summary judgment motion conflicted with Code Civ. Proc., § 437c and was thus invalid];
 
 Cortez
 
 v.
 
 Bootsma
 
 (1994) 27 Cal.App.4th 935, 938 [33 Cal.Rptr.2d 20] [local rule which limited attorney fee award to amount agreed upon by plaintiff to be paid to plaintiff’s attorney conflicted with statute providing for “reasonable” fees and thus was inapplicable].)
 

 Here, the court below erroneously believed itself restricted by Los Angeles County Superior Court rule 3.2 in determining the amount of attorney fees to be award to CLP. Thus, the fee award was not an exercise of discretion as contemplated by section 3250, but the consequence of an erroneous view of the court’s power. The case must therefore be remanded for a redetermination of the award, taking due consideration of the nature, difficulty, intricacy and importance of the litigation, the amount involved, the skill required and success of the attorney’s efforts, his or her learning, age and experience, and the time consumed.
 
 (Church of Scientology
 
 v.
 
 Wollersheim, supra,
 
 42 Cal.App.4th at p. 659;
 
 Sternwest Corp.
 
 v.
 
 Ash, supra,
 
 183 Cal.App.3d at p. 76.)
 
 [8]
 

 Disposition
 

 The judgment is affirmed. However, the matter is remanded for a redetermination of the amount of costs and attorney fees to be awarded to CLP in accordance with the views expressed herein. Costs on appeal are awarded to CLP.
 

 Klein, P. J., and Kitching, J., concurred.
 

 The petition of appellant American Bonding Co. for review by the Supreme Court was denied June 11, 1997.
 

 [1]
 

 Unless otherwise noted, further statutory references are to the Civil Code.
 

 Section 3248 provides in pertinent part as follows: “To be approved the payment bond shall satisfy all of the following requirements: HD ... HD (b)Provide that if the original contractor or a subcontractor fails to pay any of the persons named in Section 3181 [persons entitled to
 
 *156
 
 file stop notice]. . . that the sureties will pay for the same, and also, in case suit is brought upon the bond, as reasonable attorney’s fee, to be fixed by the court. . . .” Section 3250 provides that: “. . . In any action [on a payment bond], the court shall award to the prevailing party a reasonable attorney’s fee, to be taxed as costs.”
 

 [2]
 

 ABC’s codefendants have not appealed.
 

 [3]
 

 Former Code of Civil Procedure section 1183 (Stats. 1929, ch. 869, § 1, pp. 1924-1927), which was repealed in 1951 (Stats. 1951, ch. 1159, § 4, p. 2958), set forth a list of eligible mechanic’s lien claimants that was substantially identical to the list now found in section 3110. There have been some deletions from and additions to the list since 1951, but the language which impacts our decision in this case—“all persons and laborers of every class performing labor upon or bestowing skill or other necessary services [on a work of improvement]”—remains identical in all substantive respects to the language construed in
 
 Myers
 
 v.
 
 Alta Construction. Co., supra
 
 37 Cal.2d 739.
 

 [4]
 

 Business and Professions Code section 7031, subdivision (a) provides in pertinent part that, with certain exceptions which to not apply in this case, “. . . no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract. . . .”
 

 [5]
 

 Indeed, ABC primarily relies upon this fact to support its alternative argument that CLP was not the workers’ employer in any real sense.
 

 [6]
 

 As originally enacted, and as it read when
 
 Contractors Dump Truck Service, Inc.
 
 and
 
 Rodini
 
 were decided, Business and Professions Code section 7053 only provided that the Contractors’ State License Law did not apply “to any person who engage[d] in the activities [therein] regulated, as an employee with wages as his sole compensation.”
 

 [7]
 

 Rule 3.2 of the Superior Court of Los Angeles County Rules provides in pertinent part as follows: “Attorney’s Fees [<]Q (a) Contract Provision or Note. When a promissory note or contract provides for the recovery of (or a statute authorized the clerk to enter) a reasonable attorney fee, the following schedule shall (unless otherwise determined by the court) be applied to the amount of the new judgment exclusive of costs: [H . . . fiD Contested case (unless otherwise determined by the court): [<1... [SO Over $100,000, $5,270 plus 2% of the excess over $100,000. [*30 . . . RD (d) Itemization as to Extraordinary Services. Any application for a fee in addition to a foregoing schedule because of extraordinary services shall be accompanied by an itemized statement of the services rendered or to be rendered.”
 

 [8]
 

 Our remand on this issue should not be construed as expressing any opinion on our part regarding the proper attorney fee to be awarded by the trial court. This is a matter entirely within its properly exercised discretion.