OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 The United States Court of Appeals for the Second Circuit, by certified question, asks us whether, in the circumstances presented, a professional employer organization (PEO) may be a proper claimant under a labor and materials surety bond.
 

 Team Star Contractors, Inc. contracted with O’Ahlborg & Sons, Inc. to perform construction work at a site in Quincy, Massachusetts. In connection with the project, in March 1998 the Mountbatten Surety Company, Inc., as surety, issued two labor and material payment bonds to Team Star as principal and O’Ahlborg as obligee, in the penal sums of $5,000,000 and $1,309,600. The bonds, identical in form, provide that
 

 “THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:
 

 “1. A claimant is defined as one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.
 

 “2. The
 
 *
 
 * * Principal and Surety hereby jointly and severally agree with [O’Ahlborg] that every claimant * * * who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant’s work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond * * * ”
 

 Plaintiff, Tri-State Employment Services, Inc., acknowledges that it did not itself actually supply labor to the job site.
 
 *480
 
 Rather, plaintiff alleges that in or around March 1998, it entered into an oral agreement with Team Star to provide employee leasing services through its PEO division. Specifically, according to the complaint, the agreement was for plaintiff to
 

 “hire Team Star’s employees, lease them back to Team Star, while paying all of the former employees’ payroll, wages, federal, state and municipal taxes, workmen’s compensation insurance premiums, disability insurance premiums and union benefits, if applicable, and any and all incidental payments customarily required to be paid by an employer to and on behalf of its employees.”
 

 Team Star made timely payments until November or December 1998, at which time it owed plaintiff approximately $400,000 to $600,000. Plaintiff agreed to give Team Star more time to pay the outstanding invoices, and over the next several weeks the debt grew to $1.2 million.
 

 On January 8, 1999, some 10 months after their initial oral agreement, plaintiff and Team Star executed a memorandum of understanding as a precondition to continuing the arrangement. The writing recites that plaintiff had provided “labor and payroll services” to Team Star, had paid, on behalf of Team Star, “wages; Federal, State and local employment taxes,” and had “provided disability insurance and workman’s compensation insurance” in connection with the Quincy project. The writing further acknowledged Team Star’s debt to plaintiff in the amount of $1,113,251.90 for plaintiff’s provision of those services, and Team Star and its president agreed to execute confessions of judgment in that amount — which they did.
 

 On March 9, 1999, after Team Star again failed to pay, plaintiff filed a proof of claim with Mountbatten, seeking payment in the amount of $1,113,251.90 under one of the bonds. Plaintiff then sought relief from Mountbatten, including an action filed in the United States District Court for the Southern District of New York. The District Court granted the surety’s motion for summary dismissal of the complaint, concluding that plaintiff is not a proper claimant under the bond.
 

 On plaintiff’s appeal, the Second Circuit, noting the novelty of the issue under New York law, questioned whether a PEO should be regarded as more analogous to “(1) a creditor that finances payroll expenses, (2) an administrative services vendor that provides payroll and human resource services, (3) the employer of the construction workers, or (4) a joint employer—
 
 *481
 
 together with the client — of the workers” (295 F3d 256, 264 [2002]). The court further questioned whether under New York law the issue is more factual in nature, and whether any presumptions would apply. Seeking guidance as to these state law issues, the court certified the following issue to, us: “In the circumstances presented, is a PEO, under New York law, a proper claimant under a labor and materials surety bond?”
 
 (Id.
 
 at 269.) We accepted certification (98 NY2d 726 [2002]) and now answer in the negative.
 

 I.
 

 Resolving the novel question before us appropriately begins with consideration of the general nature of a PEO and the particular relationship between plaintiff and Team Star.
 

 While the details of individual PEO arrangements may vary greatly, a professional employer organization enables its client — a work site employer — to outsource its payroll and human resources responsibilities, including the payment of wages and employment taxes
 
 (see
 
 Martha L. Hutzelman,
 
 An Overview of Employee Outsourcing Arrangements,
 
 15 Prac Tax Law 11 [winter 2001]). The PEO also may assume other employee-related matters, such as provision of benefits and compliance with federal and state labor laws and regulations. To the extent the PEO bills the client after paying the workers it advances the client’s labor costs
 
 (see
 
 Bruce E. Katz,
 
 What a PEO Can Do for You,
 
 188 J Account 57 [July 1999]; John C. Kuehne,
 
 The Co-Employment Industry: Is it the Right Partner for Idaho Law Firms?,
 
 41 Advoc [Idaho] 14 [July 1998]).
 
 *
 

 Plaintiff operates a PEO as one of its five corporate divisions, describing its employee leasing services thusly:
 

 “What employee leasing means is that when a
 
 *482
 
 company like us goes into a client company and handles most of the human resource functions for the company, maintaining employee files, handbooks, so on and so on. We provide employee benefits to all the nonunion companies. * * * We provide workers’ compensation, and we become their payroll department. All they’re doing, in essence, is taking all the vendors that they are currently doing business with now and they are consolidating it to one vendor.”
 

 In plaintiffs PEO division, workers are transferred from the payroll of the client company — here, Team Star — to plaintiffs payroll, affording the client a “cushion period” or “float” on its payroll. The client company provides plaintiff with a list of workers, who complete and submit 1-9 and W-4 forms to plaintiff — “the only hiring paperwork,” according to plaintiff. Plaintiff places those workers on its payroll, and processes and distributes their checks based on time sheets faxed to plaintiff on a regular basis by the client, listing the employees by name and hours worked.
 

 There is no indication that plaintiff maintained a work site presence or supervisory role over work site employees; nor did it involve itself in hiring decisions, setting wages or deciding which workers went to the job site each week. While plaintiff might sometimes interview workers placed on its payroll, plaintiffs president conceded it was not “common practice” to do so. Plaintiff also did not generally conduct performance evaluations of the workers, or discipline or terminate them, although it could terminate workers if they engaged in sexual harassment, or if they injured another employee or “somebody walking down the street.” Plaintiff also might handle other human resources functions for the client, such as providing workers’ compensation and employee benefits, and maintaining employee files and handbooks.
 

 Such was the arrangement plaintiff had with Team Star. On receipt of Team Star’s employee lists, plaintiff began accepting Team Star’s time sheets, issuing payroll checks and simultaneously issuing invoices to its client reflecting payroll costs plus a markup of 19% to cover taxes, insurance and plaintiffs own fee.
 

 Is an entity in these circumstances a proper bond claimant?
 

 II.
 

 Surety bonds such as the one before us protect workers and material suppliers, assuring payment and allowing them a
 
 *483
 
 right of action against the surety in the event they are not paid by the principal
 
 (see
 
 Peter A. Alces, Suretyship and Guaranty § 6:32 [2002]). As stated by this Court:
 

 “the contracts of sureties are to be construed like other contracts so as to give effect to the intention of the parties. In ascertaining that intention we are to read the language used by the parties in the light of the circumstances surrounding the execution of the instrument, and when we have thus ascertained their meaning we are to give it effect. But when the meaning of the language used has been thus ascertained, the responsibility of the surety is not to be extended or enlarged by implication or construction, and is
 
 strictissimi juris.” (People v Backus,
 
 117 NY 196, 201 [1889].)
 

 The bond in issue defines a claimant as “one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract.” In this case the parties agree that the bond language might cover providers of labor, but they differ as to whether PE Os fall within that class of protected claimants.
 

 In considering whether plaintiff might be a proper claimant the District Court identified two categories: persons supplying labor or material to subcontractors or general contractors on a project — clearly claimants under the bond — and creditors, such as banks and other financial institutions that lend money to the principal, including loans for the purpose of meeting payroll obligations — clearly not proper claimants. Recognizing that a PEO might serve more administrative functions than a creditor, the District Court nonetheless concluded that a PEO basically provides payroll and human resource services and not labor and materials as those terms are used in the bond. For purposes of its analysis, the Second Circuit identified four possible categories — creditors, administrative services vendors, employers and joint employers — which we now address.
 

 An entity that merely advances money for the completion of a contract, as opposed to furnishing labor or material, is not protected by the state mechanics’ lien statute which — similar to payment bonds — protects labor and material suppliers
 
 (see Uvalde Asphalt Paving Co. v City of New York,
 
 191 NY 244 [1908]). The Second Circuit, relying on
 
 Uvalde,
 
 has similarly rejected labor and material bond claims for “money advanced”
 
 *484
 
 to pay for materials for a construction project since the supply of money does not constitute “furnishing materials”
 
 (Maryland Cas. Co. v Board of Water Com’rs of City of Dunkirk,
 
 66 F2d 730, 738 [2d Cir 1933],
 
 cert denied
 
 290 US 702 [1933]).
 

 Courts in other jurisdictions also have held that mere lenders and creditors are not proper bond claimants, even where the advances facilitate the provision of labor
 
 (see Tri-State,
 
 295 F3d at 265 [reviewing cases]). In cases involving statutory and private bond claims, courts have further suggested that proper claimants be limited to individuals who engage in physical labor at the job site, thereby implicitly excluding most administrative services provided to the contractor
 
 (see e.g. United States for Use & Benefit of Olson v W.H. Cates Constr. Co., Inc.,
 
 972 F2d 987 [8th Cir 1992] [discussing Miller Act cases];
 
 Walsh v International Fid. Ins. Co.,
 
 55 Misc 2d 565 [Civ Ct 1967] [rejecting attorney’s bond claim]).
 

 While the services typically provided by a PEO are similar to those of an administrative services vendor and, in some instances, also a creditor, PEOs may contract to provide additional services for individual clients. We therefore decline to preclude PEO claims as a matter of law on this ground.
 

 Similarly, PEOs’ claimant status should not rest on whether they are categorized as employers or joint employers. For one thing, the bond by its terms protects those having a direct contract with the principal or a subcontractor of the principal, and does not speak of “employers.” Determining whether a PEO is a worker’s employer, moreover, raises potential fact questions that may unnecessarily complicate the question whether PEOs are proper bond claimants — the PEO’s status as an employer, for example, may vary with the tax, statute or common-law standard under consideration
 
 (see Tri-State,
 
 295 F3d at 269 n 12;
 
 see also What a PEO Can Do for You,
 
 188 J Account).
 

 We note that an early California
 
 decision
 
 — Sweet
 
 v Fresno Hotel Co.
 
 (174 Cal 789, 164 P 788 [1917]) — hinged its determination on the claimant’s legal status as the workers’ employer. In
 
 Sweet,
 
 the court relied on that legal distinction to uphold a mechanics’ lien arising from an individual’s contract to “furnish all common labor and carpenter labor” necessary to the construction of a building, and to reject the same party’s lien claim based on an earlier agreement to “assume [] and agree [ ] to pay all of the wages” due to the contractor’s workers (174 Cal at 795-796, 164 P at 790-791). The court acknowledged,
 
 *485
 
 but was not persuaded by, the defendant’s argument that the actual mode of carrying on the work and paying the workers did not differ materially under the two agreements.
 

 While
 
 Sweet
 
 appears to establish a bright-line rule, two more recent cases demonstrate the complexity of its application. In
 
 Primo Team, Inc. v Blake Constr. Co.
 
 (3 Cal App 4th 801, 4 Cal Rptr 2d 701 [Ct App 1992]), the court rejected a public works payment bond claim made by an employee leasing company that entered into a series of “Labor Services Agreements” with a subcontractor. The court declined to deem the entity a permissible claimant where it did not claim to be the workers’ employer, even though the agreement called for the company to supply employees to the contractor and it retained the sole right (not exercised in practice) to hire, discipline and terminate the leased employees. In rejecting the leasing company’s claim, the court noted that its primary role was to “advance funds for, and administer collateral functions of, [the subcontractor’s] payroll and related obligations” (3 Cal App 4th at 805, 4 Cal Rptr 2d at 703).
 

 By contrast, the court in
 
 Contractors Labor Pool, Inc. v West-way Contrs., Inc.
 
 (53 Cal App 4th 152, 61 Cal Rptr 2d 715 [Ct App 1997]) upheld a trial court’s determination that Contractors Labor Pool, Inc. (CLP) — an entity that provided temporary workers to a contractor — was a proper claimant under a public improvement payment bond. In affirming that CLP was the workers’ legal employer for claim purposes, the court recognized the factual nature of the inquiry and relied on the trial court’s determination that:
 

 “(1) the workers were interviewed, screened and hired by CLP according to its own procedures and applying its own employment criteria; (2) the employees signed applications for employment
 
 with CLP
 
 and also signed written conditions of employment identifying them as employees of CLP; (3) CLP provided the employees with its own standard ‘Employee Handbook’; (4) while [the contractor] had a right to reject or ‘send back’ any worker sent to the jobsite by CLP, [the contractor] had no right to go farther and terminate the worker’s employment with CLP; (5) the workers’ time cards and other personnel documents identified them as CLP employees; (6) CLP covered the employees with its own workers’ compensation insurance policy; (7)
 
 *486
 
 when [the contractor] fell into default in payments to CLP, CLP threatened to withdraw workers from the project, not to stop processing or paying payroll for [the contractor]”
 
 (Contractors Labor Pool,
 
 53 Cal App 4th at 163, 61 Cal Rptr 2d at 723 [emphasis in original]).
 

 Other state courts have considered similar factors in analyzing payment bond claims involving comparable arrangements (see
 
 Jean Simpson Personnel Servs. v G & G Goncrete, LLC,
 
 803 So 2d 992 [La Ct App 2001],
 
 cert denied
 
 814 So 2d 561 [2002];
 
 Eastland Fin. Servs. v Mendoza,
 
 132 NM 24, 43 P3d 375 [Ct App 2002] [citing
 
 Contractors Labor Pool]; Gulf Ins. Co. v GFA Group, Inc.,
 
 251 Ga App 539, 554 SE2d 746 [Ct App 2001] [citing
 
 Primo
 
 and
 
 Tri-State]; but see Better Fin. Solutions, Inc. v Transtech Elec., Inc.,
 
 112 Wash App 697, 51 P3d 108 [Ct App 2002] [deeming entity a supplier of labor yet rejecting bond claim based on narrower scope of statute];
 
 see also AMS Constr. Co., Inc. v Warm Springs Rehabilitation Found., Inc.,
 
 94 SW3d 152 [Tex Ct App 2002] [question of fact whether plaintiff PEO furnished labor for lien purposes]).
 

 We decline to adopt a “legal employer” or “joint-employer” standard in determining whether a PEO is a proper bond claimant. Rather, we conclude that a PEO’s sole or primary role as a provider of administrative and human resources services, and as a payroll financier, gives rise to a presumption that the PEO does not provide labor to a contractor for purposes of a payment bond claim. However, like the California courts, we recognize that the inquiry is essentially factual and that a PEO may exercise sufficient direction and control over work site employees as to overcome the presumption and qualify as a provider of labor within the language of the bond.
 

 In determining whether a PEO is a provider of labor, a court should consider factors similar to those identified in
 
 Contractors Labor Pool,
 
 including: the PEO’s involvement in selecting and screening the workers for hire, and whether it used its own criteria in doing so; the PEO’s affirmative representations to the workers that it is their employer; the nature of the documentation exchanged between the workers and the PEO at the start of the working relationship (such as handbooks, manuals and employment forms); the PEO’s involvement in training, supervising and disciplining the workers and in otherwise retaining control over the workers or directing their behavior; whether the PEO, rather than the contractor, determined which workers could be terminated;
 
 *487
 
 and whether the PEO withheld workers, rather than its services, upon nonpayment by the contractor.
 

 III.
 

 Applying these factors, we conclude that in the circumstances before us plaintiff as a matter of law was not a provider of labor to the project. Plaintiff has not shown that it was involved in selecting or screening Team Star’s workers, that workers received or completed any documents (other than the 1-9 and W-4 forms) at the start of the PEO arrangement, or that plaintiff held itself out as the workers’ employer other than by issuing their checks. There also is no indication that plaintiff generally retained control over the workers or their training, supervision, discipline or termination. Tellingly, when Team Star failed to pay its invoices, plaintiff merely withheld its own services — not workers.
 

 In light of these undisputed facts, plaintiff’s self-characterization as the workers’ employer and a provider of labor rings hollow. Reliance on the memorandum of understanding, executed near the end of the parties’ relationship, is similarly unavailing as it does not define the terms of a PEO arrangement that might qualify as a provider of labor and indeed appears to have served principally as an acknowledgment of Team Star’s indebtedness to plaintiff.
 

 Accordingly, we conclude that in the circumstances presented, under New York law, Tri-State Employment Services, Inc. is not a proper claimant under a labor and materials surety bond.
 

 Judges Smith, Ciparick, Wesley, Rosenblatt, Graffeo and Read concur.
 

 Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered as follows: In the circumstances presented, under New York law, Tri-State Employment Services, Inc. is not a proper claimant under a labor and materials surety bond.
 

 *
 

 As PEOs have become more prevalent in recent decades, states have begun to regulate the industry. New York recently joined the trend of 22 other states by enacting the New York Professional Employer Act, effective March 23, 2003, which governs such organizations operating here (Labor Law § 915
 
 et seq.;
 
 Senate Introducer Mem In Support of L 2002, ch 565, 2002 McKinney’s Session Law News of NY, at A-786).
 

 Plaintiff urges us to conclude that the new statute has retroactive application and itself resolves the issue before us in its favor. Without reaching the retroactivity question, we note that plaintiff and Team Star did not operate under a written agreement that, among other things, allocated responsibilities and reserved to the PEO a right of direction and control over the work site employees (see Labor Law § 922 [1] [a]). The issue of the legal status of a PEO for purposes of a surety bond under the New York Professional Employer Act must therefore await another day (see Labor Law § 922 [6] [b]).