**ADVANCE'D TEMPORARIES, INC., Appellant,**

v.

**RELIANCE SURETY COMPANY**, Corpus Christi Crosswinds Apartments, Ltd., Cesar Gonzalez, Individually and d/b/a Gonzalez Construction, Appellees.

No. 13–01–821–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

July 22, 2004.

Rehearing and Rehearing En Banc Overruled June 23, 2005.

J. Bennett White, Wilson, Sheehy, Knowles, Robertson & Cornelius, Tyler, Roland L. Leon, Baker, Leon, Fancher & Matthys, Corpus Christi, for appellant.

Stephen P. Streety, Hebinck & Alter, Martin M. Hokanson, Houston, Douglas D. Mclallen, Corpus Christi, for appellees.

Before Justices YAÑEZ, CASTILLO, and GARZA.

## OPINION

Opinion by Justice CASTILLO.

This is a mechanic's lien case. Advance'd Temporaries, Inc., a temporary employment agency, challenges the trial court's legal conclusion that Advance'd has no standing to assert lien rights under chapter 53 of the Texas Property Code. The issue is one of first impression in Texas. We reverse and remand.

### I. Background Facts

Advance'd filed suit against Reliance National Indemnity Company ("Reliance"),[1] Corpus Christi Crosswinds Apartments ("Crosswinds"), and Cesar Gonzalez, d/b/a Gonzalez Construction ("Gonzalez"), seeking $208,219.56 in damages arising out of contracts associated with an apartment construction project. Reliance filed a counterclaim seeking indemnity against Gonzales. L & T, J.V. ("Lamar") intervened and brought causes of action against Gonzalez and Advance'd. Advance'd added causes of action against Lamar. Gonzalez brought cross-claims against Lamar.

In August of 1999, construction began on a building project known as the Corpus Christi Crosswinds Apartments. Lamar, Crosswind's general contractor, entered into three subcontracts with Gonzalez: (1) a $450,000 contract for framing labor; (2) a $205,000 contract for drywall installation; and (3) a $30,150.75 contract for roofing labor. Crosswind's general contract with Lamar required it to post a payment bond, with Reliance as surety, in the amount of $6,305,000, which was the total contract price. On November 10, 1999, Advance'd contracted with Gonzalez to provide temporary employees for Gonzalez's use in performing its subcontract with Lamar on the Crosswinds project.

Accordingly, Advance'd recruited, hired, and provided to Gonzalez for the Crosswinds project general laborers, carpenter's helpers, and carpenters. Between November 15, 1999 and February 11, 2000, Ad-

---

1. The surety named by Advance'd in its petition was Reliance Surety Company. Appellees filed their brief in the name of Reliance National Indemnity Company. We adopt the designation as it appears in appellees' brief.

vance'd qualified the workers by verifying legal documentation, driver's licenses, social security cards, and federal employment forms. Advance'd hired the workers as its employees and carried their worker's compensation, unemployment insurance, and general liability insurance. Advance'd invoiced Gonzalez weekly, paid all of the supplied employees, and made all proper payroll deductions. At times, more than one hundred Advance'd workers labored at Crosswinds under Gonzalez's supervision.

The relationship between Lamar and Gonzalez deteriorated. Gonzalez's work at Crosswinds abruptly ended on February 12, 2000.[2] On termination, Lamar paid Gonzalez for all outstanding work. Gonzalez paid Advance'd $63,210.67. A $208,219.56 outstanding balance remained unpaid.

Advance'd then asserted a claim against the payment bond but was unsuccessful in collecting on the bond. It filed suit for the outstanding balance. Following a bench trial, the court rendered judgment in full against Gonzalez in favor of Advance'd but denied Advance'd judgment against Crosswinds, Lamar, and Reliance. Following the bench trial, the trial court signed the final judgment on September 4, 2001. This appeal ensued.

In its second issue, Advance'd challenges the trial court's conclusion of law that Advance'd "is not a person entitled to the benefits of the mechanic's lien statutes." Advance'd contends it is entitled to recover against the payment bond because, by virtue of its contract with Gonzalez, a subcontractor, it falls squarely within chapter 53 of the property code as a provider of labor in the direct prosecution of the work. Lamar and Reliance assert that the services

provided by Advance'd, as a temporary employment agency, were payroll or administrative services and are not in the nature of "labor" or "work" as contemplated by the property code. Specifically, Lamar and Reliance argue, none of the services Advance'd provided was "labor for construction or repair." Therefore, they conclude, Advance'd is not entitled to a lien or judgment against the payment bond.

## II. ANALYSIS

### A. Standard of Review

We review a trial court's challenged conclusions of law as legal questions. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002); *Jackson v. Kincaid*, 122 S.W.3d 440, 445 (Tex.App.-Corpus Christi 2003, pet. filed). Thus, we review de novo a trial court's application of the law to the facts. In other words, we determine the correctness of the trial court's legal conclusions. *BMC Software*, 83 S.W.3d at 794. We are not obligated to give any particular deference to those conclusions. *Pegasus Energy Group v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 121 (Tex.App.-Corpus Christi 1999, pet. denied). As the final arbiter of the law, we have the power and the duty to evaluate legal determinations of the trial court independently. *Id.*

### B. Applicable Law

■ In Texas, the law recognizes two forms of mechanic's liens: constitutional and statutory. The most common, applicable here, is found in chapter 53 of the Texas Property Code. Section 53.021 states:

(a) A person has a lien if:

---

2. Advance'd claims Gonzalez's brother began dating the daughter of Lamar's superintendent. Meanwhile, hostilities arose between Gonzalez and the superintendent, resulting in Gonzalez's departure. Lamar counters that issues regarding the quality and timeliness of Gonzalez's work led to the termination.

(1) the person labors, specially fabricates material, or furnishes labor or materials for construction or repair in this state of:

 (A) a house, building or improvement;

 (B) a levee or embankment to be erected for the reclamation of overflow land along a river or creek; or

 (C) a railroad; and

(2) the person labors, specially fabricates the material, or furnishes the labor or materials under or by virtue of a contract with the owner or the owner's agent, trustee, receiver, contractor, or subcontractor.

TEX. PROP.CODE ANN. § 53.021(a)(1), (a)(2) (Vernon Supp.2004). The purpose of the statutory mechanic's lien is to protect laborers and materialmen who come within its terms for labor and materials consumed in the construction of improvements to real property. *South Coast Supply Co. v. A & M Operating Co. (In re A & M Operating Co.)*, 182 B.R. 986, 991 (Bankr.D.Tex.1993). No protection is afforded those who labor to produce or repair chattels. *Id.* A subcontractor in Texas is entitled to a lien when furnishing labor or materials for construction or repair of a building under or by virtue of a contract with the owner or the owner's subcontractor. TEX. PROP. CODE ANN. § 53.021(a)(1)(A), (a)(2) (Vernon Supp.2004). However, the statute is not designed to protect only subcontractors. Rather, the supreme court has held that "the mechanic's and materialman's lien statutes of this State will be liberally construed for the purpose of protecting laborers and materialmen." *Page v. Structural Wood Components*, 102 S.W.3d 720, 723 n. 3 (Tex.2003) (quoting *First Nat'l Bank v. Whirlpool Corp.*, 517 S.W.2d 262, 269 (Tex. 1974)).

■ The usual building contract imposes the duty to pay for furnished labor and materials primarily on the contractor. *Wilson v. Sherwin–Williams Paint Co.*, 110 Tex. 156, 217 S.W. 372, 372 (1919). The contractor selects the subcontractor. If loss must fall somewhere (either on the materialman, owner, or contractor) when a subcontractor fails to perform an obligation, it should fall on the contractor, who should be supervising the subcontractor's activities. *Id.* A materialman's right to recover is not dependent on the status of the accounts between the general contractor and the subcontractor. *See Campbell Bros., Inc. v. Gen. Elec. Supply Co.*, 383 S.W.2d 61, 64 (Tex.Civ.App.-Dallas 1964, writ ref'd n.r.e.); *see also John F. Buckner & Sons v. Ark. Fuel Oil Corp.*, 301 S.W.2d 325, 329 (Tex.Civ.App.-Waco 1957, no writ). Similarly, neither should the status of accounts determine the rights of one who furnished labor. *See Campbell Bros., Inc.*, 383 S.W.2d at 64; *see also John F. Buckner & Sons*, 301 S.W.2d at 329. To do so would deprive those furnishing labor of substantial and certain benefits that the lien statutes are designed to provide. *See Sherwin–Williams Paint Co.*, 217 S.W. at 373.

■ Chapter 53 defines "labor" is as "labor used in the direct prosecution of the work." TEX. PROP.CODE ANN. § 53.021(3) (Vernon Supp.2004). "Work" is "any part of construction or repair performed under an original contract." TEX. PROP.CODE ANN. § 53.001(14) (Vernon Supp.2004). To construe the statute as Lamar and Reliance propose and require every lien claimant to engage in the business of construction is contrary to the legislature's intent to construe the lien statute liberally for the purpose of protecting laborers and materialmen. *See Page*, 102 S.W.3d at 723 n. 3. Accordingly, we hold that chapter 53 of the property code affords protection to those who "furnish labor" as well as those who

actually labor on a construction project in Texas.

However, we conclude that not every arrangement will establish that a temporary employment agency "furnishes labor" as defined by chapter 53. For instance, a temporary employment agency may contract with a construction company to provide only administrative services for the contractor's employees and not labor engaged in direct prosecution of the work. The California Court of Appeals has addressed just this issue. *See Contractors Labor Pool, Inc. v. Westway Contractors, Inc.*, 53 Cal.App.4th 152, 61 Cal.Rptr.2d 715, 722–23 (1997). The plaintiff, a corporation in the business of furnishing skilled and unskilled temporary workers to construction contractors, sought recovery of damages for breach of contract and to assert lien rights on a payment bond. The court stated:

> [T]he legal status of an employer of laborers furnished to a work of improvement is the crucial factor which distinguishes a person who "furnishes" such laborers to the project, and is thus entitled to lien rights, from a person who merely organizes the work force, performs administrative functions, advances wages, or does all three on behalf of another, and is consequently not entitled to lien rights.

*Id.* The court further stated that "an entity which takes upon itself the legal responsibilities of an employer is entitled to a mechanic's lien and related remedies if it furnishes the labor of its employees to a work of improvement, but one who does not assume those legal responsibilities is not." *Id.* The court affirmed the trial court's judgment entitling the corporation in the business of furnishing temporary construction workers mechanic lien rights on the payment bond. *Id.*

This Court also addressed a similar question on an appeal from a summary judgment. *See AMS Constr. Co., Inc. v. Warm Springs Rehab. Found., Inc.*, 94 S.W.3d 152, 161 (Tex.App.-Corpus Christi 2002, rule 53.7(F) mot. for extension of time filed). There, AMS Construction and Third Coast entered into an agreement that AMS was to furnish labor to Third Coast for the construction of a hospital. *Id.* at 155. Third Coast was to pay AMS the invoice price of the labor furnished. *Id.* Warm Springs contended AMS only provided administrative services for Third Coast, specifically payroll services, and was not entitled to a lien as a matter of law. *Id.* We held that whether AMS "furnished labor" for chapter 53 lien purposes is a question of fact. *Id.* at 161.

Here, Advance'd is a temporary employment agency, not in the construction business itself, that provides temporary construction workers under a contractual arrangement analogous to the agreement at issue in *Warm Springs*. Advance'd contracted with Gonzalez to provide the necessary labor to enable Gonzalez to fulfill its contractual duties to Lamar. Therefore, ultimately, the nature of the arrangement among Advance'd, the temporary workers it supplied, and Gonzalez is a question of fact. *See id.*

■ We have reviewed relevant decisions in other jurisdictions to develop factors to consider in determining if Advance'd furnished labor in direct prosecution of work on the Crosswinds construction project. Those factors include: (1) the temporary employment agency's involvement in selecting and screening the workers for hire; (2) the use by the agency of its own criteria for hiring the workers; (3) affirmative representations by the agency to the workers that it is their employer; (4) the nature of documentation exchanged between the work-

ers and the agency at the start of the working relationship; (5) the agency's involvement in training, supervising, and disciplining the workers and otherwise retaining control over the workers or directing their behavior; (6) whether the agency rather than the contractor determined which workers could be terminated; and (7) whether the agency withheld workers rather than services on nonpayment by the contractor. *See, e.g., Contractors Labor Pool,* 61 Cal.Rptr.2d at 722; *see also Tri–State Empl. Servs. v. Mountbatten Sur. Co.,* 99 N.Y.2d 476, 477–78, 758 N.Y.S.2d 595, 788 N.E.2d 1023 (2003) (adopting *Contractors Labor Pool* multi-factor test to determine right of agency to which contractor outsourced its payroll and human resources responsibilities to assert lien rights on payment bond).

### C. Application of the Law to the Facts

 Here, the record shows that Advance'd recruited carpenters and general laborers to work for Gonzalez on the construction project. The record is not clear as to whether Advance'd used its own hiring criteria, if any, in making employment decisions. However, Advance'd did qualify the workers by verifying legal documentation, driver's licenses, social security cards, and federal employment forms. The record is devoid of evidence of any screening, qualifying, or hiring decisions undertaken by Gonzalez. Further, Advance'd recruited and hired all workers as

its own employees and provided all worker's compensation, unemployment insurance, and general liability insurance. Finally, all workers hired by Advance'd to work for Gonzalez received paychecks from Advance'd, and Advance'd made all proper payroll deductions.[3] On these facts, we conclude that the trial court did not reach a correct legal conclusion. *See BMC Software,* 83 S.W.3d at 794. Therefore, we hold that Advance'd "furnished labor in direct prosecution of the work" on the Crosswinds construction project pursuant to section 53 of the Texas Property Code. *See* Tex. Prop.Code Ann. §§ 53.001(14), 53.021(3) (Vernon Supp. 2004). We sustain Advance'd's second issue.

### III. CONCLUSION

Our disposition of the second issue compels reversal of the trial court's judgment. Accordingly, we do not address the remaining issues raised by Advance'd.[4] *See* Tex.R.App. P. 47.1. Accordingly, we reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

---

3. The trial court found that Advance'd provided Gonzalez the following services: recruiting of employees, payment of payroll for the employees, payment of payroll taxes for the employees, and providing general liability and worker compensation insurance for the employees.

4. The issues raised by Advance'd are whether: (1) Lamar has to pay twice; (2) Advance'd provided labor; (3) Advance'd is a bank; (4)

the laborers were involved in direct prosecution of the work; (5) bond claims are capped by the pertinent subcontract; (6) Advance'd was negligent; and (7) Advance'd timely perfected its entire claim. Because our decision today may affect resolution of the other issues, we do not reach them in this appeal. *See Johnson v. Ventling,* 132 S.W.3d 173, 179 n. 4 (Tex.App.-Corpus Christi 2004, no pet. h).