**RELIANCE NATIONAL INDEMNITY COMPANY, L & T, J.V., and Lamar Construction, Inc., Petitioners,**

v.

**ADVANCE'D TEMPORARIES, INC., Respondent.**

No. 05–0558.

Supreme Court of Texas.

Argued Oct. 18, 2006.

Decided June 8, 2007.

H. Victor Thomas, King & Spalding LLP, Houston, Stephen P. Streety, Spring, for Petitioners.

J. Bennett White, Christopher Thomas Massey, J. Bennett White, P.C., Tyler, Roland L. Leon, Baker, Leon & Francher, L.L.P., Doug McLallen, Corpus Christi, Martin M. Hokanson, Houston, for Respondent.

Charles W. Stuber, Canterbury, Stuber, Elder & Gooch, Surratt, P.C., Dallas, for Amicus Curiae Tx. Building Branch of Associated General Contractors of America.

Justice MEDINA delivered the opinion of the Court.

In this case, we decide whether a temporary employment agency, which places workers at a construction project under a contract with a subcontractor, "furnishes labor" within the meaning of Chapter 53 of the Texas Property Code, thus qualifying for a mechanic's lien. The trial court denied the temporary agency's lien, concluding that it had not "furnish[ed] labor" within the statute's meaning. *See* Tex. Prop.Code § 53.021 The court of appeals, however, reversed the trial court's judgment and remanded the case for further proceedings. 165 S.W.3d 1. Although we do not agree with the court of appeals' analysis in all respects, we do agree that the temporary employment agency furnished labor within the statute's meaning and therefore affirm.

## I

L & T, J.V. ("Lamar") agreed to serve as general contractor during construction of the Corpus Christi Crosswinds Apartments and obtained a performance bond as its contract with the project's owner required. Thereafter, Lamar subcontracted with Cesar Gonzalez, doing business as Gonzalez Construction, who agreed to frame, drywall, and roof the apartment project. Gonzalez, however, did not have an adequate work force for the job, and therefore sought additional workers from Advance'd Temporaries, Inc.

The agreement between Gonzalez and Advance'd identified these temporary workers as Advance'd's employees and obligated Advance'd to obtain workers' compensation and general liability insurance for them. Advance'd further offered a limited guarantee of its employees' work. Advance'd agreed to promptly replace any temporary worker, upon notification within the first two hours of work, if Gonzalez was not satisfied with the worker's performance. The contract further provided that temporary workers were not to operate machinery, automotive equipment, or work on ladders or scaffolds without Advance'd's prior written approval. Finally, Gonzalez agreed to pay Advance'd $2500 in liquidated damages if he hired any temporary worker within three months of the agreement.

Advance'd recruited and supplied more than 100 workers for Gonzalez, qualified the legal status of each worker, and completed the necessary paper work and insurance requirements. Advance'd also paid the temporary workers and their payroll taxes, invoicing Gonzalez weekly for its services. This relationship was only a few months old when Lamar abruptly terminated Gonzalez's work.

Lamar apparently paid Gonzalez all that was owed for his work, but Gonzalez failed to pay the full amount owed to Advance'd. Advance'd nevertheless took care of the temporary workers, paying them for their labor. Advance'd then gave notice of its claim under the mechanic's lien statute, which Lamar disputed. Advance'd thereupon filed an affidavit claiming a mechanic's lien. Advance'd sued Gonzalez for the balance owed under its contract after it was unable to collect from Gonzalez's or Lamar's surety bond. The Crosswinds Apartments, Lamar, and the surety were also joined in the litigation.

Following a bench trial, the judge rendered judgment against Gonzalez, but denied Advance'd recovery against the other parties. The judge concluded that Advance'd was not entitled to recover against Lamar's surety bond because Advance'd had not furnished labor as the mechanic's statute requires, but had simply extended credit to Gonzalez for its payroll.

Advance'd appealed, complaining that it had furnished labor at the Crosswinds project under a contract with a subcontractor and was thus entitled to the benefits of the mechanic's lien statute, including a judgment against the general contractor's bond. The court of appeals agreed, reversed the trial court's judgment, and remanded the case for the trial court to determine the remaining issues regarding the validity and amount of Advance'd's claim. 165 S.W.3d 1.

## II

Lamar and its surety, Reliance National Indemnity Co. (hereafter "Reliance"), appeal, asserting three errors. First, Reliance argues that, contrary to the court of appeals' analysis, Advance'd did not "furnish labor" on the Crosswinds project and thus was not entitled to a mechanic's lien. In a related issue, Reliance argues that the court of appeals applied an erroneous standard of review by mistakenly viewing the question of whether Advance'd "furnished labor" as a legal question rather than a fact question. Finally, Reliance complains that even if Advance'd might have been entitled to a lien, it did not timely perfect its rights, and the court erroneously failed to consider that as an alternative basis for affirming the trial court's judgment.

## A

■ Relevant to the first two issues is how one qualifies under the mechanic's lien statute as a person who "furnishes labor." TEX. PROP.CODE § 53.021(a). The statute provides, in relevant part, that a person has a lien if the person "labors . . . or furnishes labor or materials for construction or repair in this state of [ ] a house, building, or improvement" and "the person labors . . . or furnishes the labor or materials under or by virtue of a contract with the owner or the owner's agent

[which includes contractors and subcontractors among others]." *Id.* § 53.021(a)(1),(2). Chapter 53 defines "labor" as "labor used in the direct prosecution of the work" and defines "work" as "any part of construction or repair performed under an original contract." *Id.* §§ 53.001(3), (14). An "original contract" is "an agreement to which an owner is a party either directly or by implication of law." *Id.* § 53.001(7). These provisions led the court of appeals to conclude that Chapter 53 protects those who labor in Texas as well as those who furnish labor under contract for the benefit of an owner's construction project. 165 S.W.3d at 4–5.

Reliance argues, however, that Advance'd did not "furnish labor" for the Crosswinds project because it did not control or supervise the temporary workers and was not responsible for the quality of their work. Reliance further submits that the temporary workers were Gonzalez's employees under the borrowed-employee doctrine. *See St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 538 (Tex.2003)(quoting Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Malpractice, Premises & Products* PJC 52.2 (1997)("An employee ceases to be an employee of his general employer if he becomes the 'borrowed employee' of another.")). Reliance then reasons that Advance'd did not furnish labor for the project because it was not the employer of the temporary workers who actually performed the work. The court of appeals concluded, however, that the temporary workers were Advance'd's employees, and we agree.

The contract clearly identifies the temporary workers as Advance'd's employees and makes Advance'd the responsible party. Advance'd was responsible for recruiting and screening these workers. Ad-

vance'd was responsible for hiring, firing, paying and insuring them. Advance'd also had the final word on whether these workers could be exposed to certain working conditions.

■ Clearly, Advance'd did not control the details of the work at the construction site, but that does not mean it ceased to be their employer. The borrowed-employee doctrine does not provide otherwise. See *St. Joseph Hosp.*, 94 S.W.3d at 537–38(discussing the borrowed-employee doctrine). That tort doctrine is concerned with vicarious liability and apportionment of responsibility for employees who have more than one master. *Id.* The doctrine has no application here because this case is one of contract and the responsibilities are spelled out in the parties' agreement.

The nature of the temporary employment business is that clients of the temporary employment agency will direct and control the work that needs to be done; otherwise, the agency's service would have little value to the client. The contract indicated that the temporary workers were, and continued to be, Advance'd's employees and the responsibility Advance'd assumed for these workers confirms that relationship. Moreover, Advance'd retained a degree of control over these workers, requiring prior notice and agreement for certain hazardous duties, immediate notification of any injury, paid time and one-half for certain holidays, and a minimum work day of four hours per employee. Gonzalez had the right to reject any temporary worker, but he could not dismiss the worker or affect that worker's continuing relationship, if any, with Advance'd. In sum, Advance'd did not merely perform administrative services but rather assumed actual responsibility as the employer of these workers.

Other courts agree that a temporary employment agency's claim to a mechanic's lien is ordinarily justified by its relationship to the temporary workers. *See, e.g., Eastland Fin. Servs. v. Mendoza,* 132 N.M. 24, 43 P.3d 375, 380 (2002); *Contractors Labor Pool Inc., v. Westway Contractors, Inc.,* 53 Cal.App.4th 152, 61 Cal. Rptr.2d 715, 722 (1997). The California court identified employer status as the "crucial factor" for lien rights, writing:

> The designation of a person as the "employer" of another is not a mere label.... Rather, such designation signifies a legal relationship in which the employer has legal responsibilities to the employee and to third parties, which are absent where a person merely supervises another's employees or disburses to such employees wages which are due *from the other person* to the employees....

*Contractors Labor Pool,* 61 Cal.Rptr.2d at 722 (emphasis in original).

In this case, Advance'd hired construction workers as its employees, who then labored on a construction of an improvement in this state, by virtue of a contract with an owner, contractor, or subcontractor, thus satisfying the statutory requirement of the mechanic's lien statute. Tex. Prop.Code § 53.021(a). Under these circumstances, Advance'd is no different from a supplier who furnishes lumber, pipe, or shingles. Instead of materials, however, Advance'd furnished labor, paying the workers for their services, just as a hardware supplier might pay for the hinges, doorknobs, and fixtures it provides to a construction project. We therefore conclude that, because the temporary workers here were Advance'd's employees, Advance'd furnished labor by providing these workers to Gonzalez for work at the Crosswinds construction project.

**B**

Reliance also attacks the court of appeals' decision from a procedural perspec-

tive, arguing that the court applied the wrong standard of review. Among the trial court's findings of fact and conclusions of law was the conclusion that Advance'd was not entitled to recover under the surety bond because it "did not perform 'labor' as that term is defined in the mechanic's lien statutes." The court of appeals reviewed this conclusion of law as a legal question, ultimately disagreeing with the trial court. Reliance submits that the question is actually one of fact that should have been reviewed under a sufficiency of the evidence standard rather than the court of appeals' de novo approach.

■■■■ Appellate courts review legal determinations de novo, whereas factual determinations receive more deferential review based on the sufficiency of the evidence. What might otherwise be a question of fact becomes one of law when the fact is not in dispute or is conclusively established. *See Tenneco Inc. v. Enter. Products Co.*, 925 S.W.2d 640, 643 (Tex. 1996). The relevant legal question here is whether the mechanic's lien statute applies to this temporary employment agency, but that determination rests on the existence of the factual basis required by the statute; i.e., whether Advance'd furnished labor to a Texas construction project under a contract with the owner or its agent.

Reliance contends that some of these facts were at issue and that the court of appeals improperly substituted its view of the evidence for that of the trial court.

For example, Reliance submits that Advance'd's contract was inadequate because it did not identify the Crosswinds project as the workplace for the temporary workers. As a legal matter, the mechanic's lien statute does not require this, but more importantly, the temporary workers undisputedly did labor for the owner's agent, under contract, at the Crosswinds project. Reliance's factual dispute is therefore immaterial. Similarly, Reliance reprises its argument that Advance'd did not control the temporary workers at the construction site and thus did not furnish labor. In the parlance of this procedural attack, Reliance's argument is that this lack of control at the work site is some evidence that Advance'd did not furnish labor. But again the factual dispute is immaterial. Gonzalez's control over the work site does not contradict or supplant the terms of the contract and is not evidence material to the employment question or to the relationship between Advance'd and its employees.

The court of appeals, however, proposed a seven-factor test, gleaned from other jurisdictions, that it submits as a generic aid for determining when a party has "furnished labor." 165 S.W.3d at 5–6.[1] We do not adopt that test. The court applied some of these factors to conclude that Advance'd "furnished labor." *Id.* at 6. Although these "factors" might be relevant for determining employee status in general, balancing them against one another is not the answer to the legal question posed here. Whether Advance'd "furnished la-

---

1. "Those factors include: (1) the temporary employment agency's involvement in selecting and screening the workers for hire; (2) the use by the agency of its own criteria for hiring the workers; (3) affirmative representations by the agency to the workers that it is their employer; (4) the nature of documentation exchanged between the workers and the agency at the start of the working relationship; (5) the agency's involvement in training, supervising, and disciplining the workers and otherwise retaining control over the workers or directing their behavior; (6) whether the agency rather than the contractor determined which workers could be terminated; and (7) whether the agency withheld workers rather than services on nonpayment by the contractor."

bor" and is therefore entitled to a mechanic's lien depends on its relationship to the workers. Because the evidence conclusively establishes that Advance'd was the employer, and was the party responsible for the worker's pay and related benefits, the court of appeals did not err in its legal conclusion that Advance'd was entitled to a mechanic's lien.

### C

Finally, Reliance argues that the court of appeals erred in not addressing other independent grounds supporting the trial court's judgment. Reliance's complaint, however, focuses on the value of Advance'd's claim rather than its validity. For example, Reliance contends that Advance'd's claim under the bond should be reduced because it failed to timely perfect its claims for part of its services. Advance'd responds that the court of appeals properly remanded the valuation issue for the trial court to determine, and we agree. *See* TEX.R.APP. P. 43.3 (court of appeals should render judgment except when remand is necessary for further proceedings).

The court of appeals' judgment is affirmed.