OPINION OF THE COURT
Michael D. Stallman, J.
*703 Petitioner entered into a contract with nonparty F.J. Scianxe Construction Co., Inc. to perform construction management services in connection with petitioner’s construction of a hotel on its property, known as 25-33 Cooper Square, New York, New York. Sciame allegedly entered into a contract with Angel Construction Group, LLC, to perform superstructure concrete work at the construction project. Angel entered into a professional employer organization (PEO)[1] agreement with respondent Assured Source National, LLC.
On April 30, 2008, respondent filed with the County Clerk of New York County a mechanic’s lien against the property at issue in the amount of $316,561.13, for unpaid labor and materials performed and furnished through September 1, 2007.
Pursuant to Lien Law § 19 (6), petitioner Cooper Square Hotel, LLC seeks an order discharging a mechanic’s lien that respondent Assured Source National, LLC filed on April 30, 2008 against the real property at issue.
Discussion
Petitioner argues that the lien should be discharged because respondent and Angel executed waivers of mechanic’s hens and partial releases. Respondent executed the waiver and partial release dated August 7, 2007; Angel executed the waiver and partial release dated September 27, 2007. (Mizzi affidavit, exhibits H, I.) Both waivers identically state, in relevant part,
“The undersigned further acknowledges that, except for monies retained for subsequent payment pursuant to the terms of the agreement, the payment aforesaid constitutes payment of all sums presently due and owing to the undersigned for the said labor performed and/or material and/or equipment furnished and/or services provided and the undersigned does hereby release and waive any claims against *704 . . . Cooper Square Hotel LLC.” (Ibid.)
According to Sciame’s president, the last day that Angel performed any labor on the project was August 6, 2007, because Angel did not provide Sciame with proof of proper insurance required under their contract. (Mizzi affidavit ¶¶ 7-8.) Petitioner therefore concludes that respondent has waived any liens against the property.
In support of the petition, Sciame also claims that it paid Angel and respondent in full, commencing in February 2007 up to, and including, August 7, 2007. (Mizzi affidavit ¶14.) In February 2007, Sciame purportedly started issuing two-party checks to respondent and Angel to fund Angel’s payroll, but Sciame claims that it did not authorize respondent to pay Angel’s employees after Angel stopped work on the project. (Id. ¶¶ 12, 21.) Sciame maintains that invoices supporting the lien are for payroll after Angel’s last day of work on the project, for the invoices are dated August 16, 23, and 30, 2007. (Mizzi affidavit, exhibit J.)
Finally, petitioner argues that respondent, as a PEO, is not among the class of persons or entities that may assert a mechanic’s lien under Lien Law § 3, because a PEO presumptively does not provide labor, citing Tri-State Empl. Servs. v Mountbatten Sur. Co. (99 NY2d 476 [2003], supra).
In opposition, respondent contends that the waivers are not valid because the amounts noted in the waivers have not been paid in full, which was a condition of the waivers. (Brown affidavit ¶¶ 5, 16.) Respondent claims that neither Sciame nor Angel notified it that Angel’s last day on the project was August 6, 2007. (Id. ¶ 10.) Respondent maintains that Sciame continued to instruct respondent to release payroll subsequent to August 6, 2007, and that Sciame’s project manager reviewed payroll for the week ending August 23, 2007. (Id. ¶ 11.)
Assured’s, Angel’s and Sciame’s affidavits raise factual issues which would warrant discovery as to whether the waivers are effective, and whether the August 2007 invoices are for labor provided by Angel. In reply, petitioner did not submit any proof of the payment in full of the amounts set forth in the waivers, which was the consideration of the waivers. Petitioner did not submit any affidavit from Sciame refuting respondent’s and Sciame’s alleged communications regarding Angel’s payroll after Angel’s last day of work. The invoices themselves postdate Angel’s last day of work. However, it is not clear from the invoices themselves whether the “payroll” entries could reflect *705 labor performed prior to Angel’s last day, or whether the entries merely reflect the respondent’s ongoing cost of keeping Angel’s employees on respondent’s payroll, under the PEO agreement, even though Angel had already ceased work. These issues would warrant discovery.
Notwithstanding the above, petitioner has demonstrated that respondent is not entitled to assert a mechanic’s lien against the property. “An entity that merely advances money for the completion of a contract, as opposed to furnishing labor or material, is not protected by the state mechanics’ lien statute which — similar to payment bonds — protects labor and material suppliers.” (Tri-State Empl. Servs., 99 NY2d at 483, citing Uvalde Asphalt Paving Co. v City of New York, 191 NY 244 [1908].)
In Tri-State Empl. Servs., the Court of Appeals addressed the issue of whether a PEO is a proper claimant under a labor and materials surety bond. Although Tri-State Empl. Servs. concerned a payment bond, this court agrees with the parties that the reasoning in Tri-State Empl. Servs. equally applies here. The Court of Appeals itself drew the parallel between payment bonds and mechanic’s liens, which are both meant to protect labor and material suppliers. This court sees no reason to fashion a different standard for determining whether a PEO has provided labor for the purposes of a mechanic’s lien.
In reviewing the PEO relationship, the Court of Appeals held that “a PEO’s sole or primary role as a provider of administrative and human resources services, and as a payroll financier, gives rise to a presumption that the PEO does not provide labor to a contractor for purposes of a payment bond claim.” (Id. at 486.) However, the Court of Appeals further held that the inquiry is essentially factual and that the presumption could be overcome.
“In determining whether a PEO is a provider of labor, a court should consider factors similar to those identified in Contractors Labor Pool, Inc. [v Westway Contrs., Inc., 53 Cal App 4th 152, 61 Cal Rptr 2d 715 (1997)], including: the PEO’s involvement in selecting and screening the workers for hire, and whether it used its own criteria in doing so; the PEO’s affirmative representations to the workers that it is their employer; the nature of the documentation exchanged between the workers and the PEO at the start of the working relationship *706 (such as handbooks, manuals and employment forms); the PEO’s involvement in training, supervising and disciplining the workers and in otherwise retaining control over the workers or directing their behavior; whether the PEO, rather than the contractor, determined which workers could be terminated; and whether the PEO withheld workers, rather than its services, upon nonpayment by the contractor.” (Id. at 486-487.)
Here, respondent has not overcome the presumption that, as a PEO, respondent did not provide labor. Angel’s former director of operations claims that respondent assisted in recruiting, hiring, and terminating workers, and respondent had employees fill out employment documents, and provided employees handbooks. (Atamanoff affidavit ¶ 4.) Such actions fall squarely within human resources services.
Respondent argues that it acted as a “co-employer” pursuant to its agreement with Angel, but the Court of Appeals rejected this very argument in Tri-State Empl. Servs. “PEOs’ claimant status should not rest on whether they are categorized as employers or joint employers. . . . We decline to adopt a ‘legal employer’ or ‘joint-employer’ standard in determining whether a PEO is a proper bond claimant.” (Tri-State Empl. Sens., 99 NY2d at 484, 486.) Under the New York Professional Employer Act, a PEO is, by definition, a co-employer.[2] Thus, if the court were to adopt respondent’s co-employer argument, then all PEOs would presumptively be considered as providing labor.
Conclusion
Accordingly, it is hereby ordered and adjudged that the petition to discharge a mechanic’s lien is granted, the mechanic’s lien filed by respondent Assured Source National, LLC, on April 30, 2008 in the amount of $316,561.13 against the property known as 25-33 Cooper Square, New York, New York, block 461, lots 1-6 is discharged, and the Clerk is directed to make the appropriate entries for cancellation of the lien.

. “While the details of individual PEO arrangements may vary greatly, a professional employer organization enables its client — a work site employer — to outsource its payroll and human resources responsibilities, including the payment of wages and employment taxes. The PEO also may assume other employee-related matters, such as provision of benefits and compliance with federal and state labor laws and regulations. To the extent the PEO bills the client after paying the workers it advances the client’s labor costs” (Tri-State Empl. Servs. v Mountbatten Sur. Co., 99 NY2d 476, 481 [2003] [citations omitted]; see also Labor Law § 915 et seq. [New York Professional Employer Act]).

. A “professional employer agreement” is a written contract whereby, among other things, “[a] professional employer organization expressly agrees to co-employ all or a majority of the employees providing services for the client.” (Labor Law § 916 [3] [a].)